GELBMAN ET AL., APPELLANTS, *v.* THE SECOND NATIONAL BANK OF WARREN, TRUSTEE, ET AL., APPELLEES.

[Cite as Gelbman *v.* Second Natl. Bank of Warren (1984), 9 Ohio St. 3d 77.]

(No. 83-297—Decided January 25, 1984.)

*Messrs. Pfau, Jones & Pfau* and *Mr. William E. Pfau, Jr.,* for appellants. *Mr. William D. Keast,* for appellees.

*Per Curiam.* The issue before us is whether we should impose an affirmative duty on a property owner to protect third parties from the negligent acts of business invitees which occur outside the owner's property and are beyond the owner's control. We decline to impose such a duty.

In Ohio it is well-established that liability in negligence will not lie in the absence of a special duty owed by the defendant. *Strother* v. *Hutchinson* (1981), 67 Ohio St. 2d 282, 285 [21 O.O.3d 177]; *Feldman* v. *Howard* (1967), 10 Ohio St. 2d 189, 193 [39 O.O.2d 228]; *Kauffman* v. *First-Central Trust Co.* (1949), 151 Ohio St. 298, 306 [39 O.O. 137]; *Baier* v. *Cleveland Ry. Co.* (1937), 132 Ohio St. 388, 391 [8 O.O. 208]. Accordingly, it is incumbent upon the plaintiffs herein to demonstrate the existence of a special duty on the part of defendants before a cause of action can be made.

Both parties refer to Section 318 of the Restatement of the Law, Torts 2d, in regard to the duty of a possessor of land or chattels to control the conduct of a licensee which reads at page 126 as follows:

"If the actor permits a third person to use land or chattels in his possession otherwise than as a servant, he is, if present, under a duty to exercise reasonable care so to control the conduct of the third person as to prevent him from intentionally harming others or from so conducting himself as to create an unreasonable risk or bodily harm to them, if the actor

"(a)  knows or has reason to know that he has the ability to control the third person, and

"(b)  knows or should know of the necessity and opportunity for exercising such control."

Neither party, however, refers to the following sections of the Restatement of the Law, Torts 2d:

"[Section 315] *General Principle*

"There is no duty so to control the conduct of a third person as to prevent him from causing physical harm to another unless

"(a)  a special relation exists between the actor and the third person which imposes a duty upon the actor to control the third person's conduct, or

"(b)  a special relation exists between the actor and the other which gives to the other a right to protection." *Id.* at 122.

"[Section 314] *Duty to Act for Protection of Others*

"The fact that the actor realizes or should realize that action on his part is necessary for another's aid or protection does not of itself impose upon him a duty to take such action." *Id.* at 116.

Both Sections 314 and 315 articulate the general rules of the duties imposed on third parties. Thus, unless a special relationship between defendant-owner and plaintiff-third party is extant by statute or judicial determination, no duty may be imposed.

The first inquiry is whether a specific statutory duty exists. In a case factually analogous to the instant case, the Court of Appeals of New York held that no duty existed between a parking garage operator and  a third-party pedestrian struck by a car operated by a patron exiting the garage. *Pulka* v. *Edelman* (1976), 40 N.Y.2d 781, 390 N.Y.Supp. 2d 393. Judge Cooke, writing for the majority, stated at page 783, that "the fundamental issue is whether the defendant garage owed a duty to plaintiff." Although it was undisputed that the driver of the car owed a duty to the plaintiff by virtue of New York's driving statute, Section 1173 of the Vehicle and Traffic Law (L. 1959, ch. 775, now L. 1970, ch. 603), no such statute was in effect to create a duty between the pedestrian and the garage operator. The court at page 785 declared:

"The statutes impose a duty on the driver because pedestrians are entitled to legal protection from the conduct of the driver. To this extent they may seek legal redress and are not without a remedy. To hold that pedestrians are similarly entitled to legal protection from the garage for the conduct of its patrons would be to create an unnecessary extension of a duty beyond the limits required under the law of negligence as we know it."

Similarly, in the case *sub judice,* R.C. 4511.44[1] establishes a duty for drivers, entering traffic from a driveway, to stop and yield to oncoming traffic. Thus, a duty certainly existed on the part of the driver as against the plaintiff Gelbman. The driver, however, is not before us as defendant, and no such statutory duty is imposed on the owner of the Burger King property under the present set of circumstances.

The concern of the New York court's decision in *Pulka* (see, also, *Margolin* v. *Friedman* [1978], 43 N.Y. 2d 982, 375 N.E. 2d 734) is similar to our concern today — whether defendants had a duty to control the negligent actions of the driver who actually struck the plaintiff. See, generally, Harper & Kime, The Duty to Control the Conduct of Another (1934), 43 Yale L.J. 886; Restatement of the Law, Torts 2d, Section 315; Prosser, Law of Torts (4 Ed. 1971) 348-350. In those instances where a duty to control arises as to property owners, it appears that duty has been extended "* * * quite generally to include an obligation on the part of any occupier of premises to exercise reasonable care to control the conduct of any one upon them, for the protection of those outside." Prosser, *supra,* at 350. Appellants herein have not, however, been able to find any authority for extending a duty to control third parties to a property owner for the acts of unrelated individuals, such as business invitees, who have left the owner's premises, have negligently entered a public thoroughfare outside the purview of the owner's control, and thereby negligently injure a third party. As Judge Cooke pointed out in *Pulka, supra,* at page 785:

"* * * Although it is reasonable to require one person to be responsible for the negligent conduct of another in some instances, it is unreasonable to impose that duty where the realities of every day experience show us that, regardless of the measures taken, there is little expectation that the one made responsible could prevent the negligent conduct."

For the reasons articulated above we decline to impose an affirmative duty on a property owner to protect third parties from the negligent acts of business invitees which occur outside the owner's property and are beyond the owner's control. Accordingly, we affirm the judgment of the court of appeals.

*Judgment affirmed.*

CELEBREZZE, C.J., W. BROWN, LOCHER and HOLMES, JJ., concur.

SWEENEY, C. BROWN and J. P. CELEBREZZE, JJ., dissent.

CLIFFORD F. BROWN, J., dissenting. Existing law requires this court to conclude that plaintiff's opening statement set forth facts and conditions sufficient to overcome defendants' motion for a directed verdict.

---

[1] R.C. 4511.44:

"The operator of a vehicle * * * about to enter or cross a highway from any place other than another roadway shall yield the right of way to all traffic approaching on the roadway to be entered or crossed."

Ohio law recognizes that a possessor of land[2] has a duty to exercise ordinary care in the maintenance of his property so as to avoid injuring persons using adjacent property. See, *e.g.*, *Barber* v. *Krieg* (1961), 172 Ohio St. 433 [17 O.O.2d 379], wherein the owner of swine who permitted them to escape and go onto a public highway was liable for injuries sustained by a passing motorist. Such a position is consistent with the principles set forth in 2 Harper & James, Law of Torts (1956) 1430, Section 27.1; 1461, Section 27.6; 1521, Section 27.19; Prosser, Law of Torts (4 Ed. 1971) 510, Section 75; and Restatement of the Law, Torts 2d (1965) 126, Section 318; 275, Section 371.

The possessor's duties arise from his superior knowledge of existing dangers or perils and his ability to control the premises and persons using them. Thus, in the present case, if it could be shown that the patron's actions which caused the accident were reasonably foreseeable and controllable, liability could be imposed upon defendants.

In the instant case, the defendant-operator of the Burger King was advised following a traffic survey that the intersection on which its property fronted was one of the most dangerous in the county, having been the location of multiple prior accidents. Defendant was further advised that one of the prime causes of these accidents was that the arrow on the Burger King driveway directed traffic leaving the property into the intersection at a point where drivers could not see the faces of the northbound traffic signals, which were green for northbound traffic at times when the faces of the southbound traffic signals were red for southbound traffic. Defendant was asked to contribute $1,800 to pay for a face on the traffic signal controlling the exiting customers, but refused to do so. Moreover, defendants made no attempt to give any warning to its customers of this known dangerous condition.

Such facts, as related during plaintiffs' opening argument, coupled with the extreme caution which must be exercised in sustaining any motion for a directed verdict (see *Brinkmoeller* v. *Wilson* [1975], 41 Ohio St. 2d 223 [70 O.O.2d 424]), lead to the conclusion that the trial court erred in taking the case away from the jury after plaintiffs' opening statement.

Based on the facts and conditions set forth in plaintiffs' opening statement, a reasonable mind could have concluded that an abnormally dangerous condition resulted from the location of the exit drive relative to the traffic signals with an unusual sequence which caused anticipatable confusion. I would reverse the judgment of the court of appeals and remand the cause for trial.

SWEENEY and J. P. CELEBREZZE, JJ., concur in the foregoing dissenting opinion.

---

[2] The question of whether any one or all of the defendants lack control or possession of the premises was not previously raised and need not be considered at this stage of the proceedings.