FEDERAL STEEL & WIRE CORPORATION, APPELLEE, *v.* RUHLIN CONSTRUCTION COMPANY, APPELLANT.

[Cite as Federal Steel & Wire Corp. *v.* Ruhlin Constr. Co. (1989), 45 Ohio St. 3d 171.]

(No. 88-1364—Submitted June 7, 1989—Decided August 23, 1989.)

*McIntyre, Kahn & Kruse Co., L.P.A., Scott H. Kahn* and *Mark F. Kruse,* for appellee.

*Law Offices of Jan A. Saurman* and *John V. Rasmussen,* for appellant.

*Millisor & Nobil, Roger L. Sabo* and *Gwen M. Ralph,* urging reversal for *amicus curiae,* Ohio Contractors Association.

HOLMES, J.   The key issue in this case is whether Ruhlin, as the contractor for the bridge repair work, had a duty to maintain its job site in such a

way as to protect against the vandalism that caused damage to Federal's property located beneath the bridge. For the reasons which follow, we hold that reasonable minds could have determined that Ruhlin had a duty toward Federal to take measures to protect against vandalism, and thus we affirm the court of appeals.

As a threshold to our inquiry, we note that in order for a trial court to grant a directed verdict pursuant to Civ. R. 50(A), it must construe the evidence most strongly in favor of the nonmoving party, and if reasonable minds could come to but one conclusion, the motion should be granted in favor of the moving party. In applying this legal standard, we must determine whether reasonable minds could have concluded that Ruhlin owed a duty to Federal to take adequate measures to protect against vandalism during the months in which Ruhlin's job site was left dormant.

The crux of Ruhlin's argument is that there was no duty owed to Federal to control the criminal conduct of unknown third persons who were throwing objects from Ruhlin's job site. We disagree.

It is fundamental that in order to establish actionable negligence, one must show the existence of a duty, a breach of the duty, and an injury proximately resulting therefrom. *Menifee* v. *Ohio Welding Products, Inc.* (1984), 15 Ohio St. 3d 75, 77, 15 OBR 179, 180, 472 N.E. 2d 707, 710; *Di Gildo* v. *Caponi* (1969), 18 Ohio St. 2d 125, 47 O.O. 2d 282, 247 N.E. 2d 732; *Feldman* v. *Howard* (1967), 10 Ohio St. 2d 189, 39 O.O. 2d 228, 226 N.E. 2d 564. Ordinarily, there is no duty to control the conduct of a third person by preventing him or her from causing harm to another, except in cases where there exists a special relationship between the actor and the third person which gives rise to a duty to control, or between the actor and another which gives the other the right to protection.[1] See *Littleton* v. *Good Samaritan Hospital & Health Center* (1988), 39 Ohio St. 3d 86, 92, 529 N.E. 2d 449, 455; *Gelbman* v. *Second Natl. Bank of Warren* (1984), 9 Ohio St. 3d 77, 78, 9 OBR 280, 281, 458 N.E. 2d 1262, 1263; *Cleveland, Cincinnati, Chicago & St. Louis Ry. Co.* v. *Potter* (1925), 113 Ohio St. 591, 150 N.E. 44; Restatement of the Law 2d, Torts (1965) 122, Section 315. Thus, liability in negligence will not lie in the absence of a special duty owed by a particular defendant. *Hill* v. *Sonitrol of South-*

---

[1] In *Gelbman* v. *Second Natl. Bank of Warren* (1984), 9 Ohio St. 3d 77, 79, 9 OBR 280, 281-282, 458 N.E. 2d 1262, 1263-1264, the court addressed the issue of the duty of a business to protect third parties from the actions of others and adopted Section 315 of the Restatement of the Law 2d, Torts (1965) 122. Section 315 states:

"There is no duty so to control the conduct of a third person as to prevent him from causing physical harm to another unless (a) a special relation exists between the actor and the third person which imposes a duty upon the actor to control the third person's conduct, or (b) a special relation exists between the actor and the other which gives to the other a right to protection."

The special relationships which may give rise to a duty to control the conduct of another person may be between the defendant and either the person whose conduct needs to be controlled or the injured plaintiff, the foreseeable victim. See *Menifee* v. *Ohio Welding Products, Inc.* (1984), 15 Ohio St. 3d 75, 77, 15 OBR 179, 180, 472 N.E. 2d 707, 710; *Megeff* v. *Doland* (1985), 123 Cal. App. 3d 251, 176 Cal. Rptr. 467; *Lamb* v. *Hopkins* (1985), 303 Md. 236, 492 A. 2d 1297; see, also, 1 Lee & Lindahl, Modern Tort Law, Liability & Litigation (Rev. 1988) 43, Section 3.10.

*western Ohio, Inc.* (1988), 36 Ohio St. 3d 36, 38, 521 N.E. 2d 780, 782; *Gelbman, supra*; see, also, *Feldman* v. *Howard, supra*, at 193, 39 O.O. 2d at 230, 226 N.E. 2d at 567; *Kauffman* v. *First-Central Trust Co.* (1949), 151 Ohio St. 298, 306, 39 O.O. 137, 141, 85 N.E. 2d 796, 800; *Baier* v. *Cleveland Ry. Co.* (1937), 132 Ohio St. 388, 391, 8 O.O. 208, 209, 8 N.E. 2d 1, 2.

We have found that "[t]he existence of a duty depends on the foreseeability of the injury. * * *" *Menifee* v. *Ohio Welding Products, Inc., supra*, at 77, 15 OBR at 180, 472 N.E. 2d at 710, citing *Ford Motor Co.* v. *Tomlinson* (C.A. 6, 1956), 229 F. 2d 873, 59 O.O. 345; *Gedeon* v. *East Ohio Gas Co.* (1934), 128 Ohio St. 335, 190 N.E. 924; see, also, *Hill* v. *Sonitrol of Southwestern Ohio, Inc., supra*. The court in *Menifee, supra*, set forth the following test to be used in order to determine foreseeability: "[W]hether a reasonably prudent person would have anticipated that an injury was likely to result from the performance or nonperformance of an act." *Menifee, supra*, at 77, 15 OBR at 180, 472 N.E. 2d at 710, citing *Freeman* v. *United States* (C.A. 6, 1975), 509 F. 2d 626; *Thompson* v. *Ohio Fuel Gas Co.* (1967), 9 Ohio St. 2d 116, 38 O.O. 2d 294, 224 N.E. 2d 131; *Mudrich* v. *Standard Oil Co.* (1950), 153 Ohio St. 31, 41 O.O.

117, 90 N.E. 2d 859. We recognize that there is no common-law duty to anticipate or foresee criminal activity.[2] Prosser & Keeton, Law of Torts (5 Ed. 1979) 201-203, Section 33; see, also, *Tarasoff* v. *Regents of the Univ. of Cal.* (1976), 17 Cal. 3d 425, 131 Cal. Rptr. 14, 551 P. 2d 334 (explaining the role of special relationships, and that, absent such special relationship, a defendant has no duty to control the conduct of third persons for the benefit of others). Thus, the law usually does not require the prudent person to expect the criminal activity of others. As a result, the duty to protect against injury caused by third parties, which may be imposed where a special relationship exists, is expressed as an exception to the general rule of no liability. See Note, Negligence Liability for the Criminal Acts of Another (1982), 15 J. Mar. L. Rev. 459, 465.

In *Taylor* v. *Webster* (1967), 12 Ohio St. 2d 53, 41 O.O. 2d 274, 231 N.E. 2d 870, this court dealt with the issue of a defendant's liability for injuries to a plaintiff caused by a third party. The facts of *Taylor* were that a child was entrusted with an airgun by his mother, and after the child left the airgun and went off to play, a schoolmate picked up the airgun and injured another child. This court held that:

"A rule of general acceptance is

---

[2] In finding that the vandalism to Federal was reasonably foreseeable, the court of appeals relied on *Ohio Fair Plan Underwriting Assn.* v. *Arcara* (1979), 65 Ohio App. 2d 169, 19 O.O. 3d 125, 417 N.E. 2d 115, which provided that a homeowner had a duty to undertake reasonable measures to prevent damages to adjoining homeowners from arson, where prior incidents of arson had taken place. The reliance on *Ohio Fair Plan* is misplaced, due to the fact that there were nineteen housing code violations against the homeowner for the condition of his house and

therefore a legal duty was present to maintain the dwelling. Additionally, the court of appeals cited Comment *d* to Section 314 of the Restatement of Torts 2d, which discusses an actor's duty to control active forces under his or her control. However, it is clear that in the present case the unattended building materials on the job site did not constitute an active force which, without the intervention of other forces, would impose liability upon Ruhlin. See 2 Restatement of Torts 2d at 82, Section 302, Comment *c*.

that, where the original negligence of the defendant is followed by the independent act of a third person which directly results in injurious consequences to plaintiff, defendant's earlier negligence may be found to be a proximate cause of those injurious consequences, if, according to human experience and in the natural and ordinary course of events, defendant could reasonably have foreseen that the intervening act was likely to happen. * * *

"Or, stating the proposition a little differently, the connection between the defendant's negligence as a proximate cause of an injury is not broken, if an intervening event is one which might in the natural and ordinary course of things be anticipated as reasonably probable, and the defendant's negligence remains an important link in the chain of causation. * * *" (Citations omitted.) *Id.* at 56, 41 O.O. 2d at 276, 231 N.E. 2d at 872-873; see, also, *Mudrich* v. *Standard Oil Co.* (1950), *supra,* at 39, 41 O.O. at 121, 90 N.E. 2d at 863. (In determining whether intervening acts break the causal connection between negligence and injury the question becomes whether such acts were reasonably foreseeable in light of all the attending circumstances.)

The Supreme Court of Pennsylvania addressed the issue of foreseeability in *Brogan* v. *Philadelphia* (1943), 346 Pa. 208, 29 A. 2d 671, where an owner, who was constructing a group of homes, permitted mortar to remain in an unsecured box that was the target of persons throwing stones or brickbats from his property, which caused the mortar to splash and injure another. The *Brogan* court held that:

"* * * Considering the evidence that for some time, with the landowner's knowledge, boys entered on his land and buildings, then in his possession, and threw missiles into the street and particularly into the mortar box in such way as to splash the mortar into the travelled portion of the cartway, appellant [landowner] had the burden of showing that he exercised the proper measure of care to prevent the use of his property by the boys in such way as might reasonably be thought to result in injury to users of the public highway. Should he have anticipated that unless he stopped such use of his land, injury to a lawful user of the highway would probably result? The question is for the jury, not the judge." *Id.* at 213, 29 A. 2d at 673.

Similarly, in *Katz* v. *Helbing* (1932), 215 Cal. 449, 10 P. 2d 1001, the Supreme Court of California found a general contractor liable for negligently maintaining construction materials, such as lime, on his construction site, where there were prior instances of persons throwing quantities of lime at passing streetcars. Specifically, the contractor allowed a box containing lime to remain unguarded and practically uncovered on an authorized portion of the street and sidewalk, adjacent to the construction site, which finally led to the injury of a passerby who was struck by lime hurled from the contractor's site by an intermeddler. The *Katz* court discussed the issue of foreseeability by commenting that "* * * [the] defendants were charged with notice of the possibility of boys being allured by * * * [the lime] and using it in a manner dangerous to others. Even if defendants knew nothing of the acts of the children in the instant case, they should have known, both from general experience and from the fact that the children had played with the material for days prior to the accident. Under all of the circumstances, the jury might certainly find * * * that the consequences in the case should have been foreseen." *Id.* at

453, 10 P. 2d at 1002; see, also, *Hogle v. H.H. Franklin Mfg. Co.* (1910), 199 N.Y. 388, 92 N.E. 794 (a master held liable for injuries incurred on an adjacent property, resulting from small pieces of iron and other objects being thrown by employees, where the master had prior knowledge of such acts).

Further insight into the nature of liability for third-party acts can be gained by examining Sections 448 and 449 of the Restatement of the Law 2d, Torts (1965), which provide:

Section 448:

"The act of a third person in committing an intentional tort or crime is a superseding cause of harm to another resulting therefrom, although the actor's negligent conduct created a situation which afforded an opportunity to the third person to commit such a tort or crime, unless the actor at the time of his negligent conduct realized or should have realized the likelihood that such a situation might be created, and that a third person might avail himself of the opportunity to commit such a tort or crime."[3] *Id.* at 480.

Section 449:

"If the likelihood that a third person may act in a particular manner is the hazard or one of the hazards which makes the actor negligent, such an act whether innocent, negligent, intentionally tortious, or criminal does not prevent the actor from being liable for harm caused thereby." *Id.* at 482.[4]

---

[3] Comments *b* and *c* to Section 448 of Restatement of Torts 2d, at 481-482, discuss the situations where defendants will be held liable for the acts of third parties:

"*b. When special grounds for anticipating criminal action by third person.* There are certain situations which are commonly recognized as affording temptations to which a recognizable percentage of humanity is likely to yield. So too, there are situations which create temptations to which no considerable percentage of ordinary mankind is likely to yield but which, if they are created at a place where persons of peculiarly vicious type are likely to be, should be recognized as likely to lead to the commission of fairly definite types of crime. If the situation which the actor should realize that his negligent conduct might create is of either of these two sorts, an intentionally criminal or tortious act of the third person is not a superseding cause which relieves the actor from liability."

"*c. When actor's negligence consists in creating risk of criminal action by third person.* The actor's conduct may be negligent solely because he should have recognized that it would expose the person, land, or chattels, of another to an unreasonable risk of criminal aggression. If so, it necessarily follows that the fact that the harm is done by such criminal aggression cannot relieve the actor from liability (see § 449). However, it is not necessary that the conduct should be negligent solely because of its tendency to afford an opportunity for a third person to commit the crime. It is enough that the actor should have realized the likelihood that his conduct would create a temptation which would be likely to lead to its commission.

"This is true although the likelihood that such a crime would be committed might not be of itself enough to make the actor's conduct negligent, and the negligent character of the act arises from the fact that it involves other risks which of themselves are enough to make it unreasonable, or from such risks together with the possibility of crime."

[4] In *Levy-Zentner Co.* v. *Southern Pacific Transp. Co.* (1977), 74 Cal. App. 3d 762, 781, 142 Cal. Rptr. 1, 14, the court decided, under Section 449 of Restatement of Torts 2d, that an owner of a warehouse which caught fire and damaged adjacent buildings was liable for the acts of third parties who started the fire. The court held that "[t]he foreseeability of itinerant activity was an obvious issue in this case and the tenants and owners presented evidence strongly indicating that the fire danger presented by itinerants was reasonably foreseeable. * * *" *Id.* at 781, 142 Cal. Rptr. at 14.

See, also, Prosser & Keeton, Law of Torts (5 Ed. 1984) 301, Section 44.

In reviewing jurisdictions which have construed the Restatement of Torts 2d (or Restatement of Torts), Sections 448 and 449, we note that a defendant, who is in control of certain premises, may be liable for injuries to others notwithstanding the intervening criminal acts of some parties, where the defendant knows that there has been a history of repeated tampering or vandalism of the same or similar nature occurring on such premises, and it is foreseeable that persons could be injured thereby without the implementation of adequate protective measures. See *Ekberg* v. *Greene* (1978), 196 Colo. 494, 588 P. 2d 375 (repeated vandalism to a restroom made it foreseeable that future visitors could be injured); *Richardson* v. *Ham* (1955), 44 Cal. 2d 772, 285 P. 2d 269 (defendant was liable for injuries caused by the unauthorized use of its bulldozer which was left in a place where past incidents showed that intermeddlers were likely to tamper with the machine); *Zuber* v. *Clarkson Constr. Co.* (1952), 363 Mo. 352, 251 S.W. 2d 52 (defendant may be liable for injuries caused by an intermeddler's negligent operation of an earthmoving machine, where the defendant had knowledge of previous incidents involving intermeddlers); see, also, 3 Speiser, Krause & Gans, American Law of Torts (1986) 434-448, Sections 11:17 and 11:18.

The Supreme Court of Errors of Connecticut in *Trainor* v. *Frank Mercede & Sons, Inc.* (1964), 152 Conn. 364, 207 A. 2d 54, reviewed the issue of liability under circumstances where there was a dispute as to which defendant exercised control. The court noted that "* * * one who is in actual possession and control of the portion of premises where an injury occurs is chargeable * * *. Thus, evidence indicating an actual assumption and exercise of control of the area or instrumentality from which an injury has resulted retains its full significance. * * *" *Id.* at 369, 207 A. 2d at 56. Therefore, if a person exercises control over real or personal property and such person is aware that the property is subject to repeated third-party vandalism, causing injury to or affecting parties off the controller's premises, then a special duty may arise to those parties whose injuries are reasonably foreseeable, to take adequate measures under the circumstances to prevent future vandalism. See, generally, *Gelbman* v. *Second Natl. Bank of Warren, supra; Hill* v. *Sonitrol of Southwestern Ohio, Inc., supra; Menifee* v. *Ohio Welding Products, Inc., supra.*

In turning to the case *sub judice,* we note that Ruhlin was in control of the job site. Further, there were numerous instances of vandalism on Ruhlin's job site where unknown third persons threw "rebar" and other construction materials from the bridge onto buildings below. Also, there were several incidents where vandals caused damage directly on Ruhlin's premises. Additionally, employees of Ruhlin testified that it was reasonably foreseeable that vandalism would continue to occur with some frequency at the job site.[5]

---

[5] For example, on cross-examination by appellee's attorney the following testimony regarding the foreseeability of vandalism was elicited from job superintendent Knapp:

"Q. With respect to your experience in the construction industry, is the fact of vandalism on construction sites fairly common?

"A. Yes, you have a certain amount of it on probably every job you do. There is a certain amount of vandalism on every job you do, yes.

"Q. Were there other complaints

In response to the vandalism, Ruhlin stationed security guards at both entrances to the job site after working hours. Moreover, Ruhlin erected a six-foot chain-link barbed wire fence to keep potential vandals off the premises. However, it is important to note that these protective measures were withdrawn in favor of a snow retaining fence during the winter months when the project was dormant. Moreover, Ruhlin removed all its heavy equipment during this period, while leaving small projectiles such as "rebar" and other construction materials open and unsecured on the job site.

Thus, we hold, under the facts and circumstances presented above, it was reasonably foreseeable for Ruhlin to expect that vandalism on its job site would ultimately affect Federal. Therefore, reasonable minds could have concluded that Ruhlin had a special duty in this case to maintain the protective measures undertaken,[6] or at least provide adequate measures to protect Federal from reasonably foreseeable harm similar in nature to that already experienced on or initiated from Ruhlin's job site.

Consequently, the determination whether Ruhlin owed a special duty toward Federal was not a proper issue to be decided by a directed verdict; rather, the issue should have been submitted to the trier of fact.

For all the foregoing reasons, we affirm the judgment of the court of appeals and remand this cause to the trial court for proceedings not inconsistent with this opinion.

*Judgment affirmed.*

MOYER, C.J., DOUGLAS, WRIGHT, H. BROWN and RESNICK, JJ., concur.

SWEENEY, J., concurs in the syllabus and judgment only.

---

about items being thrown off the bridge over the weekends during the course of the project prior to December, 1982?

"A. I only remember one or two instances.

"Q. What were the other—were there other incidents of vandalism?

"A. Well, yes. I think there were something like I said before, somewhere between ten and fifteen in the two years I was there.

"Q. Is the breaking of glass a common problem on construction sites by vandals?

"A. Yes, that is common.

"Q. Is it reasonable to say that that was foreseeable by you?

"A. Yes, that is something you expect, that you are going to have a few broken windows during the course of a job."

[6] In this case there was a notable drop in the number of instances of vandalism once the security guards were posted and the chain-link barbed wire fences were erected.