OPINION
{¶ 1} This is an accelerated appeal of the judgment of the Geauga County Court of Common Pleas, which granted summary judgment in favor of appellee, Charles Lyle ("Charles").
{¶ 2} Appellant, Carrie Daklin ("Daklin"), is the adult daughter of Charles. In May 2000 Daklin learned that her mother suffered from cancer and was to undergo surgery on May 18, 2000. Daklin, who was a resident of Minnesota, and her four-year-old son, returned to Ohio to be with her family during this time. Daklin stayed at her parents' home. Also staying there were Daklin's brother, Todd Lyle ("Todd") and his wife, Jodi, who were residents of Texas. Subsequently, a family friend, Cliff Henderson ("CK") and his wife, Wanda, came to stay at the Lyle home.
{¶ 3} On May 20, 2000, Daklin visited her mother at the Cleveland Clinic. Daklin also stopped at a bookstore and purchased several copies of the book "Death and Dying." Daklin intended to give a copy of the book to each couple staying at Charles' house.
{¶ 4} Daklin returned to her father's home on the evening of May 20. When she arrived, Charles, Jodi, and Wanda were socializing and sharing a bottle of wine. Daklin joined the group, had a glass of wine, and gave the books to Wanda and Jodi. Wanda and Jodi seemed put off by the books and Daklin dropped the subject.
{¶ 5} Subsequently, Todd and CK returned from a local bar. Daklin again brought up the books she had purchased. CK became upset and outraged by the book. Daklin tried to explain her reasons for buying the books but CK remained agitated. Daklin became upset and went to Charles' room. Daklin thought that Charles would follow her to the room. When he did not, Daklin went to close the bedroom door. She then overheard CK make a disparaging remark about her and her father agree. Daklin became very upset, went to the kitchen, and confronted CK.
{¶ 6} Daklin returned to the bedroom followed by Charles and Todd. All three entered the bedroom. Daklin's son was also present. Todd grabbed Daklin by the shoulders and pinned her against the wall. Charles was standing within six inches of Todd at this time and made no attempt to stop his son. Daklin tried unsuccessfully to knee Todd in the groin. Todd then threw Daklin against the opposite wall where she fell to the floor. Todd picked up Daklin and put her on the bed. He punched the side of her head several times. Todd then flipped Daklin over on her stomach, pulled her arms behind her back, and applied pressure until he heard Daklin's arm break. Charles, who remained in the room during the attack, heard Daklin's arm snap.
{¶ 7} Appellant filed claims against Charles and Todd Lyle as a result of her injuries. Appellant alleged that Charles negligently failed to control Todd's conduct and failed to protect her from injury. The trial court granted Charles' motion for summary judgment, finding that appellant failed to present evidence that Charles owed her any duty to protect her from injury by Todd. Daklin appeals asserting one assignment of error:
{¶ 8} "The trial court erred in granting appellee's motion for summary judgment when appellant demonstrated that material issues of fact existed as to whether the appellee had the knowledge, opportunity and ability to control the conduct of Todd Lyle and therefore the duty to control the conduct of Todd Lyle [so] as to prevent him from harming appellant."
{¶ 9} We review a grant of summary judgment de novo. Grafton v. Ohio Edison Co. (1996), 77 Ohio St.3d 102, 105. In applying this standard we review the trial court's grant of summary judgment independently and without deference to its determination. Lexford Prop. Mgmt., L.L.C. v. Lexford Prop. Mgmt., Inc. (2001), 147 Ohio App.3d 312, 316.
{¶ 10} Summary judgment is proper when: (1) no genuine issue as to any material fact remains to be litigated; (2) the moving party is entitled to judgment as a matter of law; and (3) it appears from the evidence that reasonable minds can come to but one conclusion, and viewing such evidence most strongly in favor of the party against whom the motion is made, that conclusion is adverse to that party. Harless v. Willis Day Warehousing, Inc. (1978), 54 Ohio St.2d 64, 66.
{¶ 11} "[A] party seeking summary judgment, on the ground that the nonmoving party cannot prove its case, bears the initial burden of informing the trial court of the basis of the motion, and identifying those portions of the record that demonstrate the absence of a genuine issue of material fact on the essential element(s) of the nonmoving party's claims." Dresher v. Burt (1996), 75 Ohio St.3d 280, 293. If the moving party has satisfied this initial burden, the nonmoving party has a reciprocal burden under Civ.R. 56(E) to set forth facts showing that there is a genuine issue for trial. Id. at 293.
{¶ 12} In order to maintain an action for negligence, a plaintiff must show that: (1) there was a duty owed to plaintiff; (2) a breach of that duty; and (3) proximate cause between the breach of duty and injury. Cole v. Pine Ridge Apartments Co. II (Dec. 21, 2001), 11th Dist. No. 2000-L-020, 2001 Ohio App. LEXIS 5854. The existence of a duty depends on the foreseeability of the injury. Id. at 5.
{¶ 13} "The test for foreseeability is whether a reasonably prudent person would have anticipated that an injury was likely to result from the performance or nonperformance of an act. The foreseeability of harm generally depends on a defendant's knowledge.
{¶ 14} "The issue of whether a defendant should have recognized the risks involved focuses on only those circumstances perceived by the defendant or those that should have been perceived at the time of the defendant's actions." (Internal quotations and citations omitted). Id.
{¶ 15} Generally, there is no duty to control the conduct of a third person to prevent him from causing harm to another. Fed. Steel Wire Corp. v. Ruhlin Constr. Co. (1989), 45 Ohio St.3d 171, 173. However, one does have a duty to control the conduct of a third person to prevent him from causing harm to another when a special relationship exists between the actor and third person, or between the actor and another that gives the other the right to protection. Id.
{¶ 16} The Restatement of the Law 2d, Torts (1965), 122, Sections 316 to 320 set forth "special relationships." Section 318 "Duty of Possessor of Land or Chattels to Control Conduct of Licensee," provides:
{¶ 17} "If the actor permits a third person to use land or chattels in his possession otherwise than as a servant, he is, if present, under a duty to exercise reasonable care so to control the conduct of the third person as to prevent him from intentionally harming others or from so conducting himself as to create an unreasonable risk of bodily harm to them, if the actor
{¶ 18} "(a) knows or has reason to know that he has the ability to control the third person, and
{¶ 19} "(b) knows or should know of the necessity and opportunity for exercising such control." See, also, Stoker v. Saxe (Feb. 13, 1992), 8th Dist. No. 59793, 1992 Ohio App. LEXIS 572.
{¶ 20} There can be no dispute that both Daklin and Todd were licensees. See Provencher v. Ohio Dept. of Transp. (1990), 49 Ohio St.3d 265; Balaci v. Semaan (Dec. 5, 1991), 8th Dist. No. 61688, 1991 Ohio App. LEXIS 5760, citing Light v. Ohio University (1986), 28 Ohio St.3d 66, 68. Likewise, Charles was present at the time appellant suffered harm. The dispute is whether Charles knew or had reason to know that he had the ability to control Todd, and knew or should have known of the necessity and opportunity for exercising such control.
{¶ 21} Appellant cites deposition testimony stating that Charles and Todd were approximately the same height and weight; Todd was loving and loyal to Charles; Charles knew Todd had a temper; and Todd, due to disparity in physical size, had the ability to harm Daklin.
{¶ 22} Appellee argues that Charles had no duty to control Todd's conduct because Todd had never physically abused Daklin; Charles was thirty-one years Todd's elder; and Charles had no reason to think the disagreement would become physical or that Todd would injure Daklin.
{¶ 23} Construing the evidence in the light most favorable to Daklin, reasonable minds could not conclude that Charles knew or should have know of the necessity and opportunity for exercising control over Charles, i.e., appellant presented no evidence to establish the foreseeability of harm. There is no evidence that Todd had ever engaged in such conduct prior to the incidence in question. If fact, appellant testified that she had never been psychologically or physically abused by Todd. Nothing in the record indicates that Charles should have anticipated that a physical confrontation would ensue.
{¶ 24} Appellant failed to meet her burden to show that there was a genuine issue of material fact. Her sole assignment of error is without merit and the judgment of the Geauga County Common Pleas Court is affirmed.
JUDITH A. CHRISTLEY, J., concurs,
DIANE V. GRENDELL, J., concurs in judgment