OPINION *Page 2 
{¶ 1} Plaintiffs-appellants, John S. Farley and Elizabeth A. Farley, appeal from a judgment of the Franklin County Court of Common Pleas granting summary judgment to defendants-appellees, Duke Construction and Tartan West Development Company (collectively, "Duke"), McDaniel's Construction Corporation, Inc. ("McDaniel's"), Shepherd Excavating, Crager Brothers Trucking ("Crager Brothers"), and Union County, Union County Commissioners, and Union County Sheriff's Office (collectively, "Union County"). Because plaintiffs failed to demonstrate the existence of a genuine issue of material fact reflecting liability on the part of any defendant, we affirm.
 {¶ 2} Plaintiffs' complaint arises out of a one vehicle automobile accident on the morning of December 25, 2005. Plaintiffs, along with their son Steven, were proceeding southbound on Hyland-Croy Road in Union County, Ohio. After passing McKitrick Road, their vehicle slid off the road, striking a tree. While Elizabeth and Steven suffered minor injuries, John suffered a broken rib, a punctured lung and a spinal cord injury resulting in paraplegia.
 {¶ 3} Adjacent to the accident site, Duke was developing a new residential neighborhood called Tartan Fields. Duke managed the construction site and employed McDaniel's to move topsoil in dump trucks from one area of the construction site to another. The work involved McDaniel's exiting the site through a temporary entrance, going out onto Hyland-Croy Road, and then re-entering through another temporary entrance.
 {¶ 4} At the same time, Shepherd Excavating was digging the basement of a new house in the development for a homebuilder not a party to this lawsuit. Shepherd *Page 3 
Excavating retained Crager Brothers to haul the dirt away. Duke gave Shepherd Excavating permission to add the dirt it excavated to that McDaniel's hauled and unloaded. As a result, Crager Brothers' trucks were also exiting out onto the roadway with truckloads of dirt before re-entering the work area. Because plaintiffs' accident occurred on Christmas and a Sunday, no one was working at the time of the accident.
 {¶ 5} Plaintiffs commenced this action by filing a complaint on April 19, 2006 against Duke and McDaniel's, along with several other companies whose subsequent motions for summary judgment were not appealed after being granted. On July 24, 2006, plaintiffs filed their first amended complaint, adding Shepherd Excavating and Union County as additional defendants. Plaintiffs' second amended complaint was filed January 23, 2007, adding Crager Brothers as yet another defendant.
 {¶ 6} Plaintiffs' initial complaint alleged (1) negligent construction of the temporary entrances that caused the diversion of water, mud and other debris onto the roadway, (2) negligence in depositing mud and debris on the roadway as a result of the construction work that created unreasonably dangerous conditions on the roadway, (3) negligent failure to thoroughly remove mud and debris off the roadway each day, and (4) negligent failure to warn motorists about the mud and debris on the roadway despite actual or constructive knowledge of the condition. Plaintiffs' first amended complaint alleged Union County had actual or constructive notice of a hazardous condition and/or a nuisance on the roadway and negligently failed to remove it or warn approaching motorists. Apart from adding Crager Brothers as a defendant, the second amended complaint did not include any new allegations. *Page 4 
 {¶ 7} Following extensive discovery, defendants began filing motions for summary judgment. McDaniel's filed its motion on March 5, 2007, followed by Shepherd Excavating on April 20, 2007, and Duke on July 11, 2007; Crager Brothers and Union County filed separately on July 13, 2007. The trial court granted all of the motions, terminating the case with a judgment entry filed on March 6, 2008.
 {¶ 8} Plaintiffs timely appeal, assigning five errors:
 I. THE TRIAL COURT ERRED IN GRANTING DEFENDANT/APPELLEE DUKE CONSTRUCTION AND TARTAN WEST DEVELOPMENT'S MOTION FOR SUMMARY JUDGMENT AS THERE EXIST GENUINE ISSUES OF MATERIAL FACT FOR THE JURY TO CONSIDER.
 II. THE TRIAL COURT ERRED IN GRANTING DEFENDANT/APPELLEE MCDANIEL'S CONSTRUCTION CORPORATION INC.'S MOTION FOR SUMMARY JUDGMENT AS THERE EXIST GENUINE ISSUES OF MATERIAL FACT FOR THE JURY TO CONSIDER.
 III. THE TRIAL COURT ERRED IN GRANTING DEFENDANT/APPELLEE SHEPHERD EXCAVATING'S MOTION FOR SUMMARY JUDGMENT AS THERE EXIST GENUINE ISSUES OF MATERIAL FACT FOR THE JURY TO CONSIDER.
 IV. THE TRIAL COURT ERRED IN GRANTING DEFENDANT/APPELLEE CRAGER BROTHERS TRUCKING'S MOTION FOR SUMMARY JUDGMENT AS THERE EXIST GENUINE ISSUES OF MATERIAL FACT FOR THE JURY TO CONSIDER.
 V. THE TRIAL COURT ERRED IN GRANTING DEFENDANT/APPELLEE UNION COUNTY['S] MOTIONS FOR SUMMARY JUDGMENT AS THERE EXIST GENUINE ISSUES OF MATERIAL FACT FOR THE JURY TO CONSIDER. *Page 5 
 {¶ 9} An appellate court's review of summary judgment is conducted under a de novo standard. Coventry Twp. v. Ecker (1995),101 Ohio App.3d 38, 41; Koos v. Cent. Ohio Cellular, Inc. (1994), 94 Ohio App.3d 579,588. Summary judgment is proper only when the parties moving for summary judgment demonstrate: (1) no genuine issue of material fact exists, (2) the moving parties are entitled to judgment as a matter of law, and (3) reasonable minds could come to but one conclusion and that conclusion is adverse to the party against whom the motion for summary judgment is made, that party being entitled to have the evidence most strongly construed in its favor. Civ. R. 56; State ex rel. Grady v. State Emp.Relations Bd. (1997), 78 Ohio St. 3d 181.
 {¶ 10} Pursuant to Civ. R. 56(C), the moving party bears the initial burden of informing the trial court of the basis for the motion and identifying those portions of the record demonstrating the absence of a material fact. Dresher v. Burt (1996), 75 Ohio St.3d 280, 293. The moving party, however, cannot discharge its initial burden under this rule with a conclusory assertion that the non-moving party has no evidence to prove its case; the moving party must specifically point to evidence of a type listed in Civ. R. 56(C), affirmatively demonstrating that the nonmoving party has no evidence to support the non-moving party's claims. Id.; Vahila v. Hall (1997), 77 Ohio St.3d 421. Once the moving party discharges its initial burden, summary judgment is appropriate if the nonmoving party does not respond, by affidavit or as otherwise provided in Civ. R. 56, with specific facts showing that a genuine issue exists for trial. Dresher at 293; Vahila at 430; Civ. R. 56(E). See, also, Castrataro v. Urban (Mar. 7, 2000), Franklin App. No. 99AP-219.
 {¶ 11} Plaintiffs' assignments of error each share a common theme, arguing genuine issues of material fact concerning plaintiffs' claims against each defendant *Page 6 
render summary judgment inappropriate. For ease of discussion, we address the fifth assignment of error first and combine the remaining assignments of error, resolving each on the basis of the issues they raise.
I. Union County {¶ 12} The undisputed evidence was that, prior to plaintiffs' accident, the dispatcher at the Union County Sheriff's Office received notice of mud on the roadway. Plaintiffs maintained that, under principles of agency law, notice to the dispatcher was notice to the county and the commissioners. In granting Union County's motion for summary judgment, the trial court determined that since the sheriff's office has no duty to maintain the roadways, notice to its dispatcher did not constitute actual or constructive notice to the county engineer or to the commissioners. Because the commissioners, who are tasked to maintain the roadways, lacked notice of the hazard, the trial court found the R.C. 2744.02(B)(3) exception to political subdivision immunity for governmental functions was not triggered, leaving Union County protected by governmental immunity.
 {¶ 13} Aware of the governmental immunity the county generally enjoys under R.C. Chapter 2744, plaintiffs assert on appeal that, contrary to the trial court's decision, the R.C. 2744.02(B)(3) exception to governmental immunity applies. In relevant part, R.C. 2744.02(B)(3) makes a political subdivision liable for its "negligent failure to keep public roads in repair and other negligent failure to remove obstructions from public roads." Plaintiffs contend the mud on the road constitutes an obstacle or obstruction under the statute, and the county's failure to remove it renders the county liable under R.C. 2744.02(B)(3). *Page 7 
 {¶ 14} The Ohio Supreme Court recently decided that "for purposes of R.C. 2744.02(B)(3), an `obstruction' must be an obstacle that blocks or clogs the roadway and not merely a thing or condition that hinders or impedes the use of the roadway or that may have the potential to do so."Howard v. Miami Twp. Fire Div., 119 Ohio St.3d 1, 2008-Ohio-2792, at ¶ 30. The obstruction at issue in Howard was ice and slush formed from water running onto a roadway following a fire department's training exercise. A teenager driving a car slid on the ice; the car spun out of control, ran off the road and hit a tree.
 {¶ 15} The roadway hazard at issue here is remarkably similar to the hazard in Howard, and the facts here present no grounds for distinguishing that decision. The mud in this case no more blocked or clogged the roadway than did the ice and slush in Howard; in both cases, the substance on the road did not block or clog the roadway, but caused the vehicles to slide. Under Howard, plaintiffs cannot prove that the R.C. 2744.02(B)(3) exception to governmental immunity applies in this case, and the trial court thus properly granted summary judgment to Union County. Plaintiffs' fifth assignment of error is overruled.
II. McDaniel's, Crager Brothers and Shepherd Excavating {¶ 16} Plaintiffs' case against McDaniel's, Crager Brothers and Shepherd Excavating rests upon plaintiffs' claim that those defendants deposited dirt on the roadway during their construction activities. Plaintiffs allege that, as the temperature rose and rain fell, the dirt turned into mud and created the hazard that caused plaintiffs' accident. The trial court concluded not only that the roadway was normal the day before *Page 8 
the accident, but that the record contained no evidence of any wrongdoing or negligence from the time work at the site ended until the accident a couple of days later.
 {¶ 17} According to the evidence, McDaniel's largely finished its work on Thursday, December 22, but was not completely off the site at that time. Early on the morning of Friday, December 23, McDaniel's employee Thomas Woods loaded a bulldozer onto a lowboy trailer and removed it from the site. Later that morning, Shepherd Excavating completed its basement excavation job; Crager Brothers, in turn, finished hauling the dirt generated from digging the basement. Employees from both those firms testified their work at the site ended around 10:00 a.m on Friday, December 23. According to their testimony, McDaniel's, Shepherd Excavating and Crager Brothers could have deposited dirt on the roadway, at the latest, on the morning of December 23. The only witnesses who testified in deposition about the condition of the roadway on that morning, including Crager Brothers' truck drivers Sam Henry and Don Litton, stated it was clean at that time.
 {¶ 18} The testimony of Gordon Stanley, a field superintendent for Savko Construction ("Savko"), at first blush appears to contradict the testimony of Henry and Litton and create an issue of fact. On December 23, Stanley was supervising a crew installing a sanitary sewer line on the site. As he left work that day, Stanley observed that the roadway was "dirty." (Stanley Depo., 56.) Stanley's subsequent testimony, however, explains his comment. Employees from McDaniel's, Crager Brothers and Shepherd Excavating left at the latest by 10:00 a.m. on December 23; Stanley did not depart until around 1:30 or 2:00 p.m. At that time, according to Stanley, other crews were still "working the dirt" and hauling dirt to the dump site. Id. at 97. Stanley stated that "in the *Page 9 
area behind us * * * where they're building the houses and stuff" trucks "were still coming and going." Id.
 {¶ 19} Even when we draw all reasonable inferences in plaintiffs' favor, the evidence does not create a genuine issue of fact. The undisputed evidence is that when McDaniel's, Crager Brothers and Shepherd Excavating all ceased working, the roadway was clean. After they left, other crews moved dirt to the dump site, and the road was then "dirty." The only reasonable inference from the evidence is that one of the other entities still working after McDaniel's, Crager Brothers and Shepherd Excavating left was responsible for the dirt found on the road when Stanley ended his work. Stanley's testimony thus fails to create a genuine issue of material fact regarding the liability of McDaniel's, Crager Brothers and Shepherd Excavating.
 {¶ 20} Plaintiffs also point to the testimony of John Farley, Reverend Gloria Brooks and park ranger Douglass Weakley, who found the roadway dirty on December 24, the day before the accident. While the trial court relied upon these three witnesses in granting summary judgment to McDaniel's, Crager Brothers and Shepherd Excavating, plaintiffs contend the testimony instead creates a genuine issue regarding the alleged negligence of McDaniel's, Crager Brothers and Shepherd Excavating.
 {¶ 21} Plaintiffs' contention, however, suffers the same deficiencies as does their reliance on Stanley's testimony. The undisputed evidence demonstrates (1) McDaniel's, Crager Brothers and Shepherd Excavating completed their work by 10:00 a.m. on Friday, December 23, at which time the roadway was clean, and (2) other crews were hauling dirt onto the roadway after McDaniel's, Crager Brothers and Shepherd Excavating left. As a result, the testimony concerning dirt on the roadway on December 24 does not create a *Page 10 
genuine issue for trial, as the evidence suggests the roadway only became dirty as other companies hauled dirt later that day.
 {¶ 22} Lastly, plaintiffs also note an additional aspect of the testimony of Thomas Woods who stated that though he did not remember having trouble leaving the site, the trailer he was pulling could have bottomed out when he exited, potentially scraping dirt onto the roadway. Plaintiffs couple Woods' testimony with evidence that the ground conditions likely would have cause mud to be dragged out onto the roadway. Neither creates an issue for trial.
 {¶ 23} Woods' testimony amounts to little more than speculation three steps removed from the inference plaintiffs seek to draw: (1) Woods did not remember having difficulty leaving the site, (2) he did not remember bottoming out, (3) but if he did, he could have scraped the road. The record indicates his speculation lacks factual foundation because, according to the undisputed evidence of Sam Henry and Don Litton, the roadway was clean after Woods left the site.
 {¶ 24} Similarly, although plaintiffs presented Henry with photographs of the site entrances, taken sometime after the accident, that showed the construction site to be muddy and filled with tire ruts, Henry noted the ruts depicted in the photos were not present when he worked at the site. Litton likewise testified to the absence of ruts on December 23, stating the photos showed wet ground, not the dry, frozen conditions he encountered at the site.
 {¶ 25} In the final analysis, plaintiffs' evidence fails to create genuine issues of fact about whether McDaniel's, Crager Brothers and Shepherd Excavating left the roadway dirty when they terminated their work on the morning of Friday, December 23. The trial *Page 11 
court did not err in granting their motions for summary judgment. Moreover, our determination that McDaniel's and Crager Brothers were entitled to summary judgment moots plaintiffs' contentions that Duke and Shepherd Excavating were vicariously liable for any negligence on the part of McDaniel's or Crager Brothers. Accordingly, we overrule plaintiffs' second, third, and fourth assignments of error.
III. Duke {¶ 26} In their first assignment of error, plaintiffs contend the trial court erred in granting summary judgment to Duke. The trial court determined Duke closed the construction site on December 22. Based on Duke's undisputed evidence that any dumping occurring after December 22 was without Duke's knowledge or authorization, the trial court concluded plaintiffs failed to create a genuine issue of fact that Duke had actual or constructive knowledge of the condition of the roadway so as to expose it to liability.
 {¶ 27} Plaintiffs contend the trial court made several errors in granting summary judgment to Duke. They maintain the evidence creates the following issues for trial concerning Duke's alleged liability: (1) Duke did not leave the roadway clean at the end of the day on Thursday, December 22; (2) Duke failed to properly close the work site; (3) Duke failed to prevent access to the site; (4) the trial court improperly determined any dirt dumping on December 23 was unauthorized; (5) Duke negligently constructed and maintained the temporary entrances to the site; and (6) Duke is vicariously liable for McDaniel's negligence. Plaintiffs' arguments lack merit. *Page 12 
 A. Unclean Roadway on December 22
 {¶ 28} Initially, plaintiffs argue that the roadway was not clean when Duke closed the construction site on December 22. Closely related to plaintiffs' arguments against McDaniel's, Crager Brothers and Shepherd Excavating, plaintiffs' contention does not focus on the crucial time frame for the condition of the roadway: December 23, the last time any defendant worked at the site. The question of whether the roadway was clean on December 22 is irrelevant, as the undisputed evidence was that the roadway was not dirty when Crager Brothers quit work at 10:00 a.m. on December 23. Duke, who left the site on December 22, incurred no liability, even if the roadway was muddy at the time, due to the apparent efforts of the other defendants in cleaning the roadway.
B. Duke's Negligent Failure to Close the Work Site
 {¶ 29} Plaintiffs next contend Duke was negligent in closing the work site on December 22 because, even though it was aware that some contractors were planning to work the next day, Duke failed to notify others that the work site was being closed. The evidence discloses Duke knew Savko was going to work on December 23, but Duke also knew Savko's activities were contained within the construction site and did not impact the roadway. In fact, Savko used an alternate entrance off a separate road to access the work site.
 {¶ 30} While Duke failed to notify Shepherd Excavating of the site's closure, plaintiffs' evidence, as noted, fails to demonstrate a basis for finding Shepherd Excavating liable for the accident. Duke thus incurs no liability for failing to prevent Shepherd Excavating from working that day. While Savko's superintendent Stanley testified that trucks were still dumping dirt when he left in the early afternoon of December 23, plaintiffs *Page 13 
have not presented any evidence connecting Duke to those activities or indicating Duke knew the activities would occur. Although plaintiffs assert a subcontractor that Duke employed could have been the entity dumping the dirt, such a suggestion is only speculation in the absence of any supporting evidence. An unrelated third-party as easily could have transported and dumped the dirt without Duke's knowledge and permission. Indeed, Stanley's testimony suggests those working when he left were homebuilders unconnected to Duke, as they were working "where they're building the houses." (Stanley Depo., 97.)
C. Duke's Negligent Failure to Prevent Access to the Site
 {¶ 31} Plaintiffs also argue Duke failed to properly prevent access to the site. Although Duke superintendent Mark Avers testified he could have put up a gate or taken other steps to ensure that no one could enter the site, nothing was done to completely restrict access. Plaintiffs, however, fail to point to any case law or statute imposing on Duke a duty to prevent entrance to the construction site during the holiday work recess.
 {¶ 32} "It is fundamental that in order to establish actionable negligence, one must show the existence of a duty, a breach of the duty, and an injury proximately resulting therefrom." Federal Steel WireCorp. v. Ruhlin Constr. Co. (1989), 45 Ohio St.3d 171, 173, citingMenifee v. Ohio Welding Products, Inc. (1984), 15 Ohio St.3d 75, 77. The existence of a duty depends upon the foreseeability of the injury, which is determined by examining whether "a reasonably prudent person would have anticipated that an injury was likely to result from the performance or nonperformance of an act." Federal Steel Wire, supra, citing Menifee, supra. *Page 14 
 {¶ 33} Any liability accruing to Duke out of the failure to keep others from entering the work site requires that Duke have the duty to protect plaintiffs from the actions of a third party. Generally, "[t]here is no duty so to control the conduct of a third person as to prevent him from causing physical harm to another unless (a) a special relation exists between the actor and the third person which imposes a duty upon the actor to control the third person's conduct, or (b) a special relation exists between the actor and the other which gives the other a right to protection." Restatement of the Law 2d, Torts (1965) 122, Section 315.
 {¶ 34} Exceptions, however, exist. In Federal Steel Wire, the Ohio Supreme Court found a duty to take protective measures on a dormant job site when it was reasonably foreseeable that vandalism potentially causing harm to third parties would occur. "[A] defendant, who is in control of certain premises, may be liable for injuries to others notwithstanding the intervening criminal acts of some parties, where the defendant knows that there has been a history of repeated tampering or vandalism of the same or similar nature occurring on such premises, and it is foreseeable that persons could be injured thereby without the implementation of adequate protective measures." Id. at 177.
 {¶ 35} For Duke to be liable for failing to completely prevent access to the work site after completion of work on December 22, plaintiffs had to present some evidence that Duke reasonably could foresee a trespasser who entered onto the site in order to dump dirt would also track mud onto the roadway and make travel on the road dangerous. Plaintiffs attempted to carry their burden by presenting evidence that Shepherd Excavating, Crager Brothers and McDaniel's were on the site without Duke's knowledge or its express permission on December 23. While technically the three *Page 15 
companies may have been trespassing on that occasion, the evidence shows that they did not leave dirt on the roadway at that time.
 {¶ 36} Evidence also suggested Duke was aware of the possibility that others might enter the work site to dump dirt without permission. The evidence, however, failed to rise above the level of a generalized awareness that trespassing is common at any construction site. No evidence indicated Duke had reason to know either of a specific risk of dumping at this site or that such activity would render the roadway dangerous for travel. Accordingly, plaintiffs' evidence fails to create an issue about whether Duke had a duty or breached a duty to restrict access to the work site.
D. Trial Court's Determination about Post-December 22 Dumping
 {¶ 37} Challenging the trial court's determination that any dumping after December 22 was unauthorized, plaintiffs next argue the evidence shows that any dumping on December 23 was minimal, adding only an "insignificant" amount of dirt to the roadway. (Plaintiffs' brief, 19.) Plaintiffs' contentions do not advance their claim against Duke because, the undisputed evidence in the record is that the roadway was clean when the last of the defendants left the site on December 23. The fact that some dirt was transported that day does not demonstrate any liability on behalf of Duke since the evidence does not support plaintiffs' claim that the roadway was dirty on December 22 and remained in that condition until the accident.
E. Duke's Negligent Construction and Maintenance of TemporaryEntrances
 {¶ 38} Plaintiffs also contend Duke is liable for negligently constructing and maintaining the entrances to the site. In support of their negligent construction claim, plaintiffs point to the testimony of Tom Messerly, the right-of-way manager for the *Page 16 
Union County Engineer, who stated not only that Duke did not apply for a permit before building the entrances, but that one entrance failed to satisfy the permitting requirements because it was located too close to a parallel road.
 {¶ 39} According to the evidence, the entrances were not built with a culvert pipe to maintain the flow of storm water in a ditch between the roadway and the construction site. With that premise, plaintiffs suggest the absence of the culvert pipe caused rain water to accumulate on the roadway. Messerly, however, failed to create a genuine issue of fact for trial because his testimony failed to support plaintiffs' claim that problems with the placement and design of the entrances contributed to the accident. Describing the ditch as "slight" and "shallow," Messerly testified water from the ditch would not impact the roadway because not only was the roadway higher than the ditch but the construction site entrances and the ground sloped away from the road. (Messerly Depo., 31, 46.) His testimony thus indicates that the placement and design of the entrances were not contributing factors to the accident.
 {¶ 40} Relying on a statement of David Hayes, a McDaniel's employee, plaintiffs assert Duke nonetheless negligently maintained the entrances by failing to deposit or replenish stone placed in the entrances to help remove dirt from truck tires before the vehicles entered the roadway. Hayes testified the photographs he was shown of the entrance taken sometime after the accident look "worse than what it was," as they depicted standing water. (Hayes Depo., 21.) Hayes stated the water was not a problem when he worked at the site the week before the accident as "it was all frozen" at that time. Id. Most importantly, while Hayes' testimony proves the presence of mud at the site at *Page 17 
some point in time, it fails to show how the condition of the entrances contributed to the accident.
F. Duke's Vicarious Liability for McDaniels' Negligence
 {¶ 41} Plaintiffs' lastly claim Duke is vicariously liable for the negligence of McDaniel's. Plaintiffs' contention lacks merit because, as noted, the evidence fails to create an issue of fact to support plaintiffs' claim that McDaniel's was negligent.
 {¶ 42} Accordingly, the trial court did not err in granting summary judgment in favor of Duke. Plaintiffs' first assignment of error is overruled.
 {¶ 43} Having overruled plaintiffs' five assignments of error, we affirm the judgment of the trial court.
Judgment affirmed.
 McGRATH, P.J., and KLATT, J., concur. *Page 1