OPINION
{¶ 1} This case is before this court on remand from the Ohio Supreme Court's decision in Wallace v. Ohio Dept. of Commerce, Div. ofState Fire Marshal, 96 Ohio St.3d 266, 2002-Ohio-4210, which reversedWallace v. Dept. of Commerce (Oct. 19, 2000), Franklin App. No. 99AP-1303.
 {¶ 2} The factual background, procedural history, and testimony underlying this case previously have been reported in both this court's earlier opinion and the Ohio Supreme Court's opinion of Wallace. SeeWallace, Franklin App. No. 99AP-1303, and Wallace, 96 Ohio St.3d 266, at ¶ 2-11. Accordingly, only a condensed summary is provided here.
 {¶ 3} On July 3, 1996, Todd Hall entered the Ohio River Fireworks store in Scottown, Lawrence County, Ohio, with a lit cigarette. Before store employees could intervene, Hall used the lit cigarette to set fire to a stack of "crackling wheel" fireworks, which, in turn, ignited other fireworks within the store. A fire resulted that killed nine people and injured several others.[1] At the time of the fire, Flying Dragon, Inc., possessed a valid fireworks wholesaler license, which had been issued by the fire marshal, to operate the Ohio River Fireworks store. In October 1995, the Ohio River Fireworks store had been inspected by the fire marshal as required by statute. See, generally, R.C. 3743.16. Additionally, prior to 1996, as a matter of internal policy, fire marshal inspectors were encouraged to make seasonal inspections of fireworks businesses during the July 4th fireworks season to ensure compliance with applicable statutes and regulations. During the spring of 1995, two seasonal inspections were conducted, and the store's sprinkler system was determined to be functional.
 {¶ 4} In June 1996, after a commercial competitor informed the fire marshal that Ohio River Fireworks was advertising and selling Class B fireworks[2] to parties that were unauthorized to purchase them, Michael Kraft, then an acting field supervisor, organized a "bust buy" operation, during which fire marshal agents would try to purchase Class B fireworks without a proper license. A seasonal inspection of the Ohio River Fireworks store was postponed until after the "bust buy" was completed and was not performed prior to the fire on July 3, 1996.
 {¶ 5} On June 28, 1996, five days before the fatal fire, Donald Eifler, an arson investigator, and Thomas Baker and Michael Kraft, two fire safety inspectors, conducted a "bust buy," during which Eifler purchased Class B fireworks without a proper license. None of the three fire marshal agents who were present at the "bust buy" conducted a fire inspection at any time that day.
 {¶ 6} Following the fatal fire, plaintiffs, persons injured in the fire and administrators of the decedents' estates, filed a lawsuit in the Ohio Court of Claims, alleging negligence against the state fire marshal.
 {¶ 7} At trial, plaintiffs presented testimony that suggested the store's sprinkler system was shut off at the time of the fire and this shutdown was not an isolated occurrence. Additionally, plaintiffs presented expert opinion testimony that decedents would have had an improved chance of survival if the sprinkler system had functioned properly. Moreover, plaintiffs presented evidence that, at the time of the "bust buy," state fire marshal agents could have easily determined whether the store's sprinkler system was operational.
 {¶ 8} After a four-day trial that was limited to the issue of liability, the Court of Claims found in favor of the state fire marshal. On appeal, this court in Wallace, supra, affirmed based on an application of the public-duty rule.
 {¶ 9} However, in Wallace, 96 Ohio St.3d 266, the Ohio Supreme Court reversed this court's decision and remanded the cause. Id. at ¶ 41. See, also, id. at syllabus.
 {¶ 10} In Wallace, the Ohio Supreme Court declined to address two issues raised by the parties in that appeal, namely, "(1) the appellants' proposition concerning the proper foreseeability standard in assessing issues regarding proximate causation and (2) the state's alternate argument for affirmance based on the fire marshal's discretionary-function immunity." Wallace, 96 Ohio St.3d, at ¶ 40. The Wallace court also noted that "[b]ecause the court of appeals held that the public-duty rule barred the appellants' claims, it had no occasion to reach these issues; accordingly, we leave those issues for the court of appeals to resolve, if necessary, on remand" Id.
 {¶ 11} On remand, plaintiffs assert three assignments of error:
Assignment of Error No. 1:
The court of claims erred in not holding that the state's Discretionary Function Immunity does not apply to the negligence claim asserted by plaintiffs in this case.
Assignment of Error No. 2:
The trial court erred to the prejudice of plaintiffs by relying on the testimony of defendant's expert, Dr. George Nichols, who based his opinion of the physiological effects of the fire solely upon the inadmissible prior opinion of defendant's expert, Dr. John Hoffman [sic].
Assignment of Error No. 3:
The court of claims erred to the prejudice of plaintiffs in finding that the conduct of a third party was an intervening act that was the sole cause of the fire in question and that this act was not foreseeable.
 {¶ 12} Plaintiffs' first assignment of error asserts the trial court erred by not holding the state's discretionary function immunity did not apply to plaintiffs' negligence claim.
 {¶ 13} Under discretionary function immunity, "the state cannot be sued for its legislative or judicial functions or the exercise of an executive or planning function involving the making of a basic policy decision which is characterized by the exercise of a high degree of official judgment or discretion. However, once the decision has been made to engage in a certain activity or function, the state may be held liable, in the same manner as private parties, for the negligence of the actions of its employees and agents in the performance of that activity or function." Wallace, 96 Ohio St.3d 266, paragraph two of the syllabus, approving Reynolds v. State (1984), 14 Ohio St.3d 68, paragraph one of the syllabus.
 {¶ 14} Applying Reynolds, the Wallace court noted:
* * * In this case, for example, Reynolds arguably bars liability for the fire marshal's actions if the appellants' harm resulted from adiscretionary executive decision to forgo a seasonal inspection; if, on the other hand, the fire marshal's negligent performance of an inspection was the proximate cause of the appellant's harm, R.C. 2743.02(A)(1) allows for liability against the state.
Id. at ¶ 36. (Footnote omitted; emphasis sic.)
 {¶ 15} Here, the fire marshal decided to postpone a seasonal inspection until after the "bust buy" was conducted. (Tr. 1158-1159.) The state fire marshal's decision to postpone the seasonal inspection was a discretionary executive decision. See Wallace, 96 Ohio St.3d, at ¶ 36.
 {¶ 16} Nevertheless, plaintiffs contend that after the `"bust buy" operation was completed, the original policy decision to seasonably inspect the Ohio River Fireworks store remained operative, and state fire marshal agents were negligent in implementing this policy decision. Plaintiffs further contend this alleged negligence proximately caused harm to plaintiffs.
 {¶ 17} Here, the state fire marshal's decision to postpone a seasonal inspection of the Ohio River Fireworks store was made after an earlier directive encouraged fire marshal inspectors to make seasonal inspections of fireworks establishments. Therefore, whether the earlier directive to make a seasonal inspection of the Ohio River Fireworks store was still operational within the original time parameters is open to question. Additionally, after deciding to postpone the seasonal inspection, whether the state fire marshal had a reasonable amount of time before the fatal fire within which to implement the seasonal inspection without incurring tort liability is also debatable. See, e.g., Garland v. Ohio Dept. of Trans. (1990), 48 Ohio St.3d 10, 12, rehearing denied, 49 Ohio St.3d 705 ("hold[ing] that once an agency has made a discretionary decision, it has a reasonable amount of time to implement that decision without incurring tort liability"). It was reasonable to delay execution of the seasonal inspection until the "bust buy" was conducted as stated above. Since the "bust buy" was conducted on June 28, 1996, there then commenced a reasonable time thereafter to implement the safety inspection. It was not an abuse of discretion to fail to schedule the safety inspection within five days thereafter (to the date of the fire) as obviously schedules must be coordinated. Therefore, the trial court did not err in finding discretionary immunity applicable.
 {¶ 18} Accordingly, plaintiffs' first assignment of error is unpersuasive and overruled.
 {¶ 19} Plaintiffs' third assignment of error asserts the trial court erred by (1) finding Todd Hall's act of igniting fireworks with a lit cigarette was an intervening act that was the sole cause of the fire, and (2) Todd Hall's action was unforeseeable.
 {¶ 20} According to former R.C. 2743.02(A)(1):
The state hereby waives its immunity from liability and consents to be sued, and have its liability determined, in the court of claims created in this chapter in accordance with the same rules of law applicable to suits between private parties, except that the determination of liability is subject to the limitations set forth in this chapter * * *.
 {¶ 21} To establish actionable negligence between private parties, a party must show duty, a breach of duty, and injury proximately resulting therefrom. Texler v. D.O. Summers Cleaners Shirt LaundryCo. (1998), 81 Ohio St.3d 677, 680; Menifee v. Ohio Welding Products,Inc. (1984), 15 Ohio St.3d 75, 77; Wallace, 96 Ohio St.3d 266, at ¶ 22.
 {¶ 22} Historically, the issue of foreseeability has been viewed as a factor in both the duty element and proximate cause element of a negligence claim. See, e.g., Palsgraf v. Long Island RR. Co. (1928),248 N.Y. 339, 162 N.E. 99 (Andrews, J., dissenting); see, also, Dobbs, The Law of Torts (2001) 451, Section 182 (observing that "Judge Cardozo and the majority [in Palsgraf] insisted that the issue should be cast in the terminology of duty [or negligence] and that the substantive rules should relieve the defendant of liability if harm to the plaintiff was unforeseeable. Judge Andrews and the dissenters thought that the issue should be cast in the terminology of proximate cause and that as a matter of substantive law, foreseeability should not be determinative"). (Emphasis sic.)
 {¶ 23} "`Duty, as used in Ohio tort law, refers to the relationship between the plaintiff and the defendant from which arises an obligation on the part of the defendant to exercise due care toward the plaintiff.'"Wallace, 96 Ohio St.3d 266, at ¶ 23, quoting Commerce IndustryIns. Co. v. Toledo (1989), 45 Ohio St.3d 96, 98. "`There is no formula for ascertaining whether a duty exists. Duty "* * * is the court's `expression of the sum total of those considerations of policy which lead the law to say that the particular plaintiff is entitled to protection." (Prosser, Law of Torts (4th 3d 1971) pp. 325-326.) Any number of considerations may justify the imposition of duty in particular circumstances, including the guidance of history, our continually refined concepts of morals and justice, the convenience of the rule, and social judgment as to where the loss should fall. (Prosser, Palsgraf Revisted
(1953), 52 Mich.L.Rev. 1, 15)."'" Wallace, 96 Ohio St.3d 266, at ¶ 24, quoting Mussivand v. David (1989), 45 Ohio St.3d 314, 318, quotingWeirum v. RKO Gen. Inc. (1975), 15 Cal.3d 40, 46, 123 Cal.Rptr. 468,539 P.2d 36. The existence of a duty is a question of law for the court.Malone v. Miami Univ. (1993), 89 Ohio App.3d 527, 530, jurisdictional motion overruled, 68 Ohio St.3d 1410, citing Mussivand, supra.
 {¶ 24} Whether a duty exists depends on the foreseeability of the injury. Menifee, supra, at 77. As stated in Menifee:
The test for foreseeability is whether a reasonably prudent person would have anticipated that an injury was likely to result from the performance or nonperformance of an act. * * * The foreseeability of harm usually depends on the defendant's knowledge. * * *
Id. See, also, Wallace, 96 Ohio St.3d 266, at ¶ 23.
 {¶ 25} When determining whether a defendant should have recognized the risks involved, only those circumstances that a defendant perceived, or should have perceived, at the time of a defendant's action should be considered. Menifee, at 77.
 {¶ 26} Additionally, as stated in Fed. Steel Wire Corp. v.Ruhlin Constr. Co. (1989), 45 Ohio St.3d 171:
Ordinarily, there is no duty to control the conduct of a third person by preventing him or her from causing harm to another, except in cases where there exists a special relationship between the actor and the third person which gives rise to a duty to control, or between the actor and another which gives the other the right to protection. * * * Thus, liability in negligence will not lie in the absence of a special duty owed by a particular defendant.
Id. at 173-174. (Footnote omitted.) See, also, Restatement of the Law 2d, Torts (1965) 122, Duty to Control Conduct of Third Persons — General Principle, Section 315;[3] Wallace, 96 Ohio St.3d 266, at ¶ 38 (state defendant, like any private defendant, is protected by traditional tort concepts of duty, and Ohio tort law "requires a special relationship in order to satisfy the duty element in certain types of negligence actions, such as actions based on failure to act or failure to control the conduct of a third person").
 {¶ 27} Furthermore, as noted by this court in Evans v. Ohio StateUniv. (1996), 112 Ohio App.3d 724, 740, appeal not allowed,77 Ohio St.3d 1494:
Concerning criminal acts of a third party which the defendant might reasonably anticipate, "the mere fact that misconduct on the part of another might be foreseen is not of itself sufficient to place the responsibility upon the defendant." Prosser Keeton, [Law of Torts (5 Ed. 1984)] at 305. Rather, "[i]t is only where misconduct was to be anticipated, and taking the risk of it was unreasonable, that liability will be imposed for consequences to which such intervening acts contributed." Id. at 313.
 {¶ 28} Here, the state fire marshal did not have a special relationship with plaintiffs or Todd Hall that gave rise to a duty to protect plaintiffs or control the action of Todd Hall. See, generally, Restatement of the Law 2d, Torts (1965), 122, Section 315. Nor, based on the evidence, can we conclude Todd Hall's misconduct, i.e., deliberately igniting the "crackling wheel" fireworks, was to be anticipated.
 {¶ 29} Furthermore, based on our review of the evidence, we find the objective of the June 28, 1996 visit to the Ohio River Fireworks store was to conduct an undercover investigatory operation, not a safety inspection and, on June 28, 1996, state fire marshal safety inspectors did not complete a safety inspection of the fireworks store. See, also, Court of Claims decision, at 16 ("defendant's agents were on the premises for the sole purpose of making a bust-buy and not to perform an inspection"); Court of Claims decision, at 10 ("[a]lthough there was conflicting testimony at trial regarding the amount of time Eifler and Baker remained in the store, it is clear that their objective was to complete the bust-buy operation and that they did not perform a safety inspection on June 28, 1996"); Wallace, 96 Ohio St.3d 266, at ¶ 7 ("[n]one of the three fire marshal agents who were present at the "bust buy" conducted a fire safety inspection at any time that day").
 {¶ 30} Nevertheless, plaintiffs contend on June 28, 1996, state fire marshal agents were still negligent because state fire marshal safety inspectors did not observe that the store's sprinkler system was allegedly shut down, a violation which, according to plaintiffs, a reasonable, prudent fire marshal safety inspector would have observed, and state fire marshal safety inspectors did not take reasonable action to remedy this alleged violation and other alleged violations, thereby preventing plaintiffs' harm.
 {¶ 31} Even assuming the sprinkler system's alleged shutdown was plainly visible, because the objective of the June 28, 1996 visit to the fireworks store was to complete an undercover investigatory operation, not a safety inspection, and state fire marshal agents were faced with personal safety concerns associated with the "bust buy" operation, we are not persuaded that, under these circumstances, the fire marshal safety inspectors breached a duty of reasonable care. See Tr. 404 (direct examination of Thomas E. Baker) ("Q. * * * when you're down in Scottown for this bust buy, is there a reason that you didn't remain on the site and conduct the kind of walk-through inspection that you talked about before? A. We were in a hostile situation down there. I felt for my life and I did not want to go any farther, except to get out of there"). See, also, Mussivand, supra, at 318 ("[t]he common-law duty of due care is that degree of care which an ordinarily reasonable and prudent person exercises, or is accustomed to exercising, under the same or similarcircumstances"). (Emphasis added.)
 {¶ 32} Accordingly, based on the foregoing, we conclude state fire marshal agents did not breach a duty of reasonable care to plaintiffs.
 {¶ 33} Furthermore, even assuming on June 28, 1996, the state fire marshal inspectors may have breached a duty of reasonable care, to prevail on a claim of actionable negligence, plaintiffs are still required to prove by a preponderance of the evidence that the state fire marshal's alleged negligence proximately caused plaintiffs harm. See, e.g.,Wallace, 96 Ohio St.3d 266, at ¶ 38, quoting Jean W. v. Commonwealth
(1993), 414 Mass. 496, 511-512 ("[a] plaintiff must also shoulder the burden of establishing proximate cause, which could be exceedingly difficult in cases where the governmental conduct alleged to have caused injury is particularly attenuated or exacerbated by intervening circumstances. `Especially in instances where the public employee's purported negligence stems from a failure to prevent or mitigate a harmful situation that he did not cause, a plaintiff's burden of establishing proximate cause will be significant'").
 {¶ 34} "Proximate causation has been described as `some reasonable connection between the act or omission of the defendant and the damage the plaintiff has suffered.'" Queen City Terminals, Inc. v. Gen. Am.Trans. Corp. (1995), 73 Ohio St.3d 609, 618, reconsideration denied,74 Ohio St.3d 1422, quoting Prosser Keeton, Law of Torts (5 Ed. 1984) 263, Section 41. "The rule of proximate cause `"requires that the injury sustained shall be the natural and probable consequence of the negligence alleged; that is, such consequence as under the surrounding circumstances of the particular case might, and should have been foreseen or anticipated by the wrongdoer as likely to follow his negligent act."'"Jeffers v. Olexo (1989), 43 Ohio St.3d 140, 143, quoting Ross v. Nutt
(1964), 177 Ohio St. 113, 114, quoting Miller v. Baltimore OhioSouthwestern RR. Co. (1908), 78 Ohio St. 309, 325, overruled on other grounds, Schultz v. Barberton Glass Co. (1983), 4 Ohio St.3d 131. See, also, Mussivand, supra, at 321, modifying Jeffers, supra ("[i]n Jeffers ** * we equated foreseeability with proximate cause. This is misleading since they are not equitable. Rather, in order to establish proximate cause, foreseeability must be found").
 {¶ 35} Unlike duty, which is a question of law, Malone, supra, at 530, proximate cause has been described as "usually a mixed question of law and fact to be determined by the jury, under the instructions of the court, although, where the controlling facts are undisputed or conceded, it may be a question of law for the court." Columbus Ry. Power Light Co. v. Pickles (1926), 28 Ohio App. 183, 188, citing Davis, Agt.v. Atlas Assur. Co. Ltd. (1925), 112 Ohio St. 543, 551, and Lake Shore Michigan S. Ry. Co. v. Liidtke (1904), 69 Ohio St. 384.
 {¶ 36} Here, the trial court concluded that "the sole proximate cause of plaintiffs' injuries was Hall's act of arson. Under the totality of the circumstances, this court cannot find that the criminal act of a third party was a foreseeable event for which defendant can be found liable under a negligence theory." Court of Claims decision, at 18-19. However, earlier in its decision, the trial court also stated:
* * * Given the lethal environment that developed within thirty seconds after the fireworks were ignited, the court finds that even a fully functioning sprinkler system would not have completely prevented plaintiffs' injuries. However, the court also finds that defendant's argument that an operational sprinkler system would have made little or no difference in the outcome is implausible.
Id. at 5. (Emphasis added.)
 {¶ 37} Thus, although the trial court concluded Todd Hall's arson was the sole proximate cause of plaintiffs' harm, Court of Claims decision, at 18-19, the trial court also suggests an operational sprinkler system might have prevented some of plaintiffs' harm, id. at 5, thereby creating an ambiguity by suggesting the lack of an operational sprinkler system may have also been a proximate cause of plaintiffs' harm.
 {¶ 38} According to Restatement of the Law 2d, Torts (1965) 465, Section 440:
A superseding cause is an act of a third person or other force which by its intervention prevents the actor from being liable for harm to another which his antecedent negligence is a substantial factor in bringing about.
See, also, Restatement of the Law 2d, Torts (1965), 465, Section 441 (defining intervening force).
 {¶ 39} In Cascone v. Herby Kay Co. (1983), 6 Ohio St.3d 155, paragraph one of the syllabus, approving and following Thrash v.U-Drive-It Co. (1953), 158 Ohio St. 465, paragraph two of the syllabus, the Ohio Supreme Court held:
Whether an intervening act breaks the causal connection between negligence and injury, thus relieving one of liability for his negligence, depends upon whether that intervening cause was conscious and responsible agency which could or should have eliminated the hazard, and whether the intervening cause was reasonably foreseeable by the one who was guilty of the negligence.
 {¶ 40} Additionally, the Cascone court, quoting Mudrich v.Standard Oil Co. (1950), 153 Ohio St. 31, 39, further observed:
"* * * If an injury is the natural and probable consequence of a negligent act and it is such as should have been foreseen in the light of all the attending circumstances, the injury is then the proximate result of the negligence. It is not necessary that the defendant should have anticipated the particular injury. It is sufficient that his act is likely to result in an injury to someone. Neff Lumber Co. v. FirstNational Bank of St. Clairsville, Admr., 122 Ohio St. 302, 309,171 N.E. 327."
Cascone, at 159-160.
 {¶ 41} "Traditionally, an intentional tort committed by a third party constitutes an intervening act which supersedes the negligence of the party creating the risk of harm, and relieves that party from liability." Volter v. C. Schmidt Co., Inc. (1991), 74 Ohio App.3d 36,37, jurisdictional motion overruled sub nom. Volter v. Cincinnati, Inc.,62 Ohio St.3d 1441.
 {¶ 42} Sections 448 and 449 of the Restatement of the Law 2d, Torts (1965) offer additional insight into the nature of liability for third party acts. See, also, Fed. Steel Wire Corp., supra, at 176.
 {¶ 43} According to Restatement of the Law 2d, Torts (1965) 480, Intentionally Tortious or Criminal Acts Done Under Opportunity Afforded by Actor's Negligence, Section 448:
The act of a third person in committing an intentional tort or crime is a superseding cause of harm to another resulting therefrom, although the actor's negligent conduct created a situation which afforded an opportunity to the third person to commit such a tort or crime, unless the actor at the time of his negligent conduct realized or should have realized the likelihood that such a situation might be created, and that a third person might avail himself of the opportunity to commit such a tort or crime.[4]
 {¶ 44} Additionally, under Section 449 of the Restatement of the Law 2d, Torts (1965) 482, Tortious or Criminal Acts the Probability of Which Makes Actor's Conduct Negligent:
If the likelihood that a third person may act in a particular manner is the hazard or one of the hazards which makes the actor negligent, such an act whether innocent, negligent, intentionally tortuous, or criminal does not prevent the actor from being liable for harm caused thereby.[5]
 {¶ 45} Here, even if state fire marshal agents had performed a seasonal inspection of the Ohio River Fireworks store prior to the fatal fire, such an inspection would not have eliminated the hazard of Todd Hall's intentional igniting of fireworks within the store. Further, there is no evidence to support a finding that state fire marshal agents knew, or should have known, their alleged negligence would have exposed plaintiffs to a risk of criminal aggression.
 {¶ 46} Therefore, notwithstanding ambiguity contained in the trial court's decision concerning proximate cause, as a matter of law, we cannot determine the trial court's finding that Todd Hall's misconduct was the sole proximate cause of plaintiff's harm is against the manifest weight of the evidence. See C.E. Morris Co. v. Foley Constr. Co. (1978),54 Ohio St.2d 279, syllabus ("[j]udgments supported by some competent, credible evidence going to all the essential elements of the case will not be reversed by a reviewing court as being against the manifest weight of the evidence"); Seasons Coal Co., Inc. v. Cleveland (1984),10 Ohio St.3d 77, 80 ("an appellate court should not substitute its judgment for that of the trial court when there exists * * * competent and credible evidence supporting the findings of fact and conclusions of law rendered by the trial judge").
 {¶ 47} Accordingly, plaintiffs' third assignment of error is not persuasive and is overruled.
 {¶ 48} Plaintiffs' second assignment of error asserts the trial court erred by relying on the testimony of Dr. George Nichols, a defense expert witness, who based his opinion upon the allegedly inadmissible prior opinion of Dr. John Hoffmann, another defense expert witness. Specifically, plaintiffs contend Dr. Hoffmann based his opinion upon an out-of-court experiment that failed to substantially replicate the conditions that existed at the time of the fatal fire. Therefore, plaintiffs reason Dr. Hoffmann's opinion lacked a proper foundation and should have been excluded. Plaintiffs further contend the facts that defense counsel asked Dr. Nichols to assume were taken from Dr. Hoffmann's earlier opinion testimony and, therefore, Dr. Nichols' opinion was impermissibly based on the opinion of the other defense expert witness, Dr. Hoffmann.
 {¶ 49} In general, courts should favor the admissibility of expert testimony whenever such testimony is relevant and Evid.R. 702 criteria are met. State v. Nemeth (1998), 82 Ohio St.3d 202, 207. Generally, a determination as to the admissibility of expert testimony is a matter within the discretion of the trial court and will not be disturbed absent an abuse of discretion. Miller v. Bike Athletic Co. (1998),80 Ohio St.3d 607, 616, citing Calderon v. Sharkey (1982),70 Ohio St.2d 218. However, a trial court's discretion is not unlimited.Miller, at 616. An "abuse of discretion" implies that a court acted in "an unreasonable, arbitrary, or unconscionable manner." State ex rel.Sartini v. Yost, 96 Ohio St.3d 37, 2002-Ohio-3317, at ¶ 21, citingState v. Herring (2002), 94 Ohio St.3d 246, 255, reconsideration denied,95 Ohio St.3d 1423, certiorari denied, 537 U.S. 917, 123 S.Ct. 301.
 {¶ 50} According to Evid.R. 702:
A witness may testify as an expert if all of the following apply:
* * *
(C) The witness' testimony is based on reliable, scientific, technical, or other specialized information. To the extent that the testimony reports the result of a procedure, test, or experiment, the testimony is reliable only if all of the following apply:
(1) The theory upon which the procedure, test, or experiment is based is objectively verifiable or is validly derived from widely accepted knowledge, facts, or principles;
(2) The design of the procedure, test, or experiment reliably implements the theory;
(3) The particular procedure, test, or experiment was conducted in a way that will yield an accurate result.
 {¶ 51} Here, plaintiffs contend Dr. Hoffmann's out-of-court experiment failed to substantially replicate the conditions that existed at the time of the fatal fire when he conducted his experiment and, therefore, the trial court should have excluded Dr. Hoffmann's opinion.
 {¶ 52} In Miller, supra, the Ohio Supreme Court held in paragraph two of the syllabus:
When an out-of-court experiment is not represented to be a reenactment of the accident and deals with one aspect or principle directly related to the cause or result of the occurrence, the conditions of the accident need not be duplicated.
 {¶ 53} Additionally, in St. Paul Fire Marine Ins. Co. v.Baltimore Ohio RR. Co. (1935), 129 Ohio St. 401, paragraph one of the syllabus, the Ohio Supreme Court held:
Evidence of experiments performed out of court, tending to prove or disprove a contention in issue, is admissible if there is a substantial similarity between conditions existing when the experiments are made and those existing at the time of the occurrence in dispute; dissimilarities, when not so marked as to confuse and mislead the jury, go to the weight rather than the admissibility of the evidence.
 {¶ 54} Here, based on our review of the record, we find Dr. Hoffmann's out-of-court experiment was not represented to be a reenactment per se of the accident. Rather, Dr. Hoffmann's out-of-court experiment dealt with principles concerning the release of gaseous elements from the "crackling wheel" fireworks during the fatal fire. Furthermore, to the extent there were dissimilarities, the trial court found these differences should be applied to the weight of the evidence, instead of admissibility.
 {¶ 55} Applying Miller and St. Paul Fire Marine Ins. Co., we conclude the trial court's admission of Dr. Hoffmann's out-of-court experiment did not constitute an abuse of discretion. Accordingly, plaintiffs' contention that Dr. Hoffmann's opinion lacked a proper foundation is unpersuasive.
 {¶ 56} Evid.R. 703 provides that "[t]he facts or data in the particular case upon which an expert bases an opinion or inference may be those perceived by him or admitted in evidence at the hearing."
 {¶ 57} In Burens v. Indus. Comm. (1955), 162 Ohio St. 549, paragraph one of the syllabus, the Ohio Supreme Court held that "[t]he hypothesis upon which an expert witness is asked to state an opinion must be based upon facts within the witness' own personal knowledge or upon facts shown by other evidence."
 {¶ 58} In this case, Dr. Nichols' opinion testimony was based upon evidence elicited by Dr. Hoffmann's experiment and testimony about the experiment that tended to establish the assumption that was posed to Dr. Nichols. We find Dr. Nichols' opinion testimony to have been properly rendered. See, e.g., State v. Volgares (May 17, 1999), Lawrence App. No. 98CA6, dismissed, appeal not allowed, 86 Ohio St.3d 1489, motion for delayed appeal denied (2000), 89 Ohio St.3d 1442, citing Price v.Daughtery (1982), 5 Ohio App.3d 157, 160 ("[a]n expert may render an opinion based on a hypothetical question so long as sufficient testimony regarding the facts of the hypothetical have been introduced at trial");Mulford-Jacobs v. Good Samaritan Hosp. (Nov. 20, 1996), Hamilton App. No. C-950634, citing Price, supra ("[a]n expert may base his opinion on an assumption when the assumption has an evidentiary basis upon which the jury can determine whether such facts have been established"). Cf.Zelenka v. Indus. Comm. (1956), 165 Ohio St. 587, 594 ("it is well settled that the opinion of an expert witness cannot be predicated either in whole or in part upon the opinions, inferences and conclusions of others, whether expert or lay witnesses"); Seley v. G.D. Searle Co. (1981), 67 Ohio St.2d 192, 206 (observing that Zelenka rule has been subjected to criticism).
 {¶ 59} Therefore, plaintiffs' second assignment of error is unpersuasive and overruled.
 {¶ 60} Accordingly, having overruled all three of plaintiffs' assignments of error, we hereby affirm the judgment of the Court of Claims of Ohio.
Judgment affirmed.
Brown and McCormac, JJ., concur.
McCORMAC, J., retired of the Tenth Appellate District, assigned to active duty under authority of Section 6(C), Article IV, Ohio Constitution.
[1] See Wallace, 96 Ohio St.3d 266, at ¶ 2, fn. 1. (Hall was later indicted on multiple counts of involuntary manslaughter and aggravated arson. Additionally, Hall, who suffers from a severe mental disorder, has been found incompetent to stand trial.)
[2] Class B fireworks are now referred to as "1.3G fireworks." See 1997 Am.Sub.H.B. No. 215, 147 Ohio Laws Part I, 1325-26, 1353.
[3] Comment c of Section 315 of the Restatement of the Law 2d, Torts (1965), 122 provides that "[t]he relations between the actor and a third person which require the actor to control the third person's conduct are stated in §§ 316-319. The relations between the actor and the other which require the actor to control the conduct of third persons for the protection of the other are stated in §§ 314A and 320."
Sections 316 to 319 of the Restatement of the Law 2d, Torts (1965), concern a duty of a parent to control conduct of a child; duty of a master to control conduct of servant; duty of possessor of land or chattels to control conduct of licensee; and duty of those in charge of a person having dangerous propensities.
Section 314A of the Restatement of the Law 2d, Torts (1965), concerns special relations giving rise to duty to aid or protect, e.g., duties of a common carrier, innkeeper, possessor of land who holds it open to the public, and one who takes custody of another under circumstances such as to deprive the other of normal opportunities for protection.
Section 320 of the Restatement of the Law 2d, Torts (1965), concerns a duty of a person having custody of another to control the conduct of third persons.
Section 315 of the Restatement of the Law 2d, Torts (1965), 122 has been adopted as law in Ohio. Fed. Steel Wire Corp., supra, at 173, fn. 1.
[4] Comments b and c to Section 448 of Restatement of the Law 2d, Torts (1965), at 481-482, discuss circumstances where a defendant will be liable for the acts of third parties:
"b. When special grounds for anticipating criminal action by thirdperson. There are certain situations which are commonly recognized as affording temptations to which a recognizable percentage of humanity is likely to yield. So too, there are situations which create temptations to which no considerable percentage of ordinary mankind is likely to yield but which, if they are created at a place where persons of peculiarly vicious type are likely to be, should be recognized as likely to lead to the commission of fairly definite types of crime. If the situation which the actor should realize that his negligent conduct might create is of either of these two sorts, an intentionally criminal or tortious act of the third person is not a superseding cause which relieves the actor from liability.
"c. When actor's negligence consists in creating risk of criminalaction by third person. The actor's conduct may be negligent solely because he should have recognized that it would expose the person, land, or chattels, of another to an unreasonable risk of criminal aggression. If so, it necessarily follows that the fact that the harm is done by such criminal aggression cannot relieve the actor from liability (see § 449). However, it is not necessary that the conduct should be negligent solely because of its tendency to afford an opportunity for a third person to commit the crime. It is enough that the actor should have realized the likelihood that his conduct would create a temptation which would be likely to lead to its commission.
"This is true although the likelihood that such a crime would be committed might not be of itself enough to make the actor's conduct negligent, and the negligent character of the act arises from the fact that it involves other risks which of themselves are enough to make it unreasonable, or from such risks together with the possibility of crime."
[5] Comment a to Section 449 provides:
"This Section should be read together with § 302 B, and the Comments to that Section, which deal with the foreseeable likelihood of the intentional or even criminal misconduct of a third person as a hazard which makes the actor's conduct negligent. As is there stated, the mere possibility or even likelihood that there may be such misconduct is not in all cases sufficient to characterize the actor's conduct as negligence. It is only where the actor is under a duty to the other, because of some relation between them, to protect him against such misconduct, or where the actor has undertaken the obligation of doing so, or his conduct has created or increased the risk of harm through the misconduct, that he becomes negligent."