[Cite as *White v. Mansfield-Richland, Morrow Counties Policy Commt. of Total Operation Against Poverty, Inc.*, 2013-Ohio-3296.]

COURT OF APPEALS
RICHLAND COUNTY, OHIO
FIFTH APPELLATE DISTRICT

| | | |
|---|---|---|
| DENISE L. WHITE, INDIVIDUALLY AND AS EXECUTOR OF THE ESTATE OF GERALDINE HECKERD | : | JUDGES: |
| | : | |
| | : | Hon. William B. Hoffman, P.J. |
| Plaintiff-Appellant | : | Hon. Patricia A. Delaney, J. |
| | : | Hon. Craig R. Baldwin, J. |
| -vs- | : | |
| | : | Case No. 12CA115 |
| MANSFIELD-RICHLAND, MORROW COUNTIES POLICY COMMITTEE OF TOTAL OPERATION AGAINST POVERTY, INC. DBA MANSFIELD MANOR, ET AL. | : | (consolidated with 12CA116 for oral argument only) |
| | : | |
| Defendants-Appellees | : | O P I N I O N |

| | |
|---|---|
| CHARACTER OF PROCEEDING: | Appeal from the Richland County Court of Common Pleas, Case No. 10-CV-706-H |
| JUDGMENT: | AFFIRMED |
| DATE OF JUDGMENT ENTRY: | July 18, 2013 |
| APPEARANCES: | |

For Plaintiff-Appellant:

DOUGLAS C. KNISLEY
1111 Dublin Road
Columbus, OH 43215

JAMES BECKER
4380 Braunton Road
Columbus, OH 43220-4304

For Defendants-Appellees:

WALTER M. KROHNGOLD
1360 E. 9th St.
1000 IMG Center
Cleveland, OH 44114

BYRON D. CORLEY
22 N. Walnut St.
Mansfield, OH 44902

GARY PIPER
3 N. Main St., Suite 500
Mansfield, OH 44902

*Delaney, J.*

{¶1} Plaintiff-Appellant Denise L. White, Individually and Executor of the Estate of Geraldine Heckerd (Case No. 12CA115) appeals the October 10, 2012 and October 15, 2012 judgment entries of the Richland County Court of Common Pleas.

**FACTS AND PROCEDURAL HISTORY**

{¶2} Mansfield Manor, located in Richland County, Ohio, is a housing complex providing low-income housing for persons with physical disabilities. Defendant-Appellee Mansfield-Richland, Morrow Counties Policy Committee of the Total Operation Against Poverty, Inc., operates Mansfield Manor. Allison R. Johnson was the property manager for Mansfield Manor. Geraldine Heckerd was a licensed practical nurse and performed various in-home nursing services on behalf of certain tenants at Mansfield Manor. Geraldine Heckerd was not an employee of Mansfield Manor.

{¶3} Jerry Hartman, a 44-year-old male, was a tenant of Mansfield Manor based on his back problems due to a workplace accident. Before accepting his application for tenancy, Mansfield Manor conducted a criminal background check on Jerry Hartman that did not reveal any prior violent crimes. In 1992, Hartman was charged with misdemeanor domestic violence but there was no record of the disposition of the case. Mansfield Manor did not conduct a psychological exam before accepting his tenancy. Since 2004, Jerry Hartman was treated by Dr. Yogesh Desai, a psychiatrist. Hartman's medical records state he was diagnosed with bipolar disorder and schizoaffective disorder.

{¶4} On May 18, 2006, Jerry Hartman was brought to MedCentral-Mansfield Hospital by the Mansfield City Police Department. The police reported to the home of

Richard and Ruth Hartman, the parents of Jerry Hartman, based on Jerry Hartman's 911 call. Jerry Hartman was at his parents' home and he thought his father was threatening his mother. Jerry Hartman allegedly made threatening statements against his father. The police brought Jerry Hartman to the hospital for a psychiatric evaluation. The May 18, 2006 hospital report stated, "[Jerry Hartman] is stating he is depressed and did admit to homicidal ideation, although denies any suicidal ideation." Jerry Hartman was discharged from the hospital.

{¶5} On May 26, 2006, at Mansfield Manor, Jerry Hartman shot and killed Geraldine Heckerd and Allison R. Johnson with a 12-gauge shotgun. Jerry Hartman then killed himself with the shotgun. The shotgun used in the crime came from the home of Richard and Ruth Hartman.

{¶6} On May 27, 2007, Plaintiff-Appellant Denise L. White, Individually and Executor of the Estate of Geraldine Heckerd ("White/Heckerd") filed a wrongful death and survivorship action in the Richland County Court of Common Pleas against Defendant-Appellee Mansfield-Richland, Morrow Counties Policy Committee of the Total Operation Against Poverty, Inc., Defendant-Appellee Richard Hartman, Ruth Hartman, and MedCentral Health System. Plaintiff-Appellant Louise Blevins, Jr., Administrator to the Estate of Allison R. Johnson ("Blevins/Johnson") simultaneously filed a wrongful death and survivorship action in the Richland County Court of Common Pleas against the same defendants. White/Heckerd and Blevins/Johnson dismissed their complaints on June 9, 2009.

{¶7} White/Heckerd and Blevins/Johnson refiled their complaints on June 2, 2010. The parties did not name the Estate of Ruth Hartman or MedCentral Health

System as defendants. The trial court ordered the cases be consolidated for all purposes including trial.

{¶8} Richard Hartman passed away on December 9, 2010. Counsel for Richard Hartman filed a Suggestion of Death on December 13, 2010. Defendant-Appellee Jeffrey Hartman, Administrator of the Estate of Richard Hartman ("the Estate of Richard Hartman") was substituted as the defendant.

{¶9} Mansfield Manor filed a motion for summary judgment against White/Heckerd on January 3, 2011. In its motion, Mansfield Manor argued Geraldine Heckerd was a business invitee on the property on May 26, 2006 and as such, Mansfield Manor did not owe a duty to Geraldine Heckerd because Jerry Hartman's criminal act was not foreseeable. In support of its motion, Mansfield Manor attached the affidavit of Fred Kane, property manager of Mansfield Manor.

{¶10} On April 28, 2011, the Estate of Richard Hartman filed a motion for summary judgment against White/Heckerd and Blevins/Johnson. Attached to the motion for summary judgment was the affidavit of Richard Hartman given before his death and the deposition of Dr. Desai. The motion argued Richard Hartman, as father of Jerry Hartman, was not liable for the deaths of Geraldine Heckerd or Allison Johnson.

{¶11} On May 31, 2011, White/Heckerd and Blevins/Johnson filed a joint motion to modify response dates to the summary judgment motions. Appellants stated the motion was not a Civ.R. 56(F) motion. The trial court modified the scheduling order to give White/Heckerd and Blevins/Johnson until September 15, 2011 to complete discovery. Appellants' response to the motions for summary judgment was due on September 26, 2011.

{¶12} White/Heckerd filed a motion to compel discovery against Mansfield Manor on August 8, 2011.

{¶13} White/Heckerd and Blevins/Johnson filed a response to the Estate of Richard Hartman's motion for summary judgment on September 26, 2011.

{¶14} On October 3, 2011, the trial court issued a scheduling order. Mansfield Manor's discovery responses were due on November 11, 2011. White/Heckerd and Blevins/Johnson were to respond to the motions for summary judgment on January 10, 2012. The trial court would hold a non-oral hearing on the motions for summary judgment on January 30, 2012.

{¶15} Mansfield Manor filed a supplemental motion for summary judgment against White/Heckerd on December 22, 2011. In the motion, Mansfield Manor argued White/Heckerd failed to argue Mansfield Manor was liable under a theory of gross negligence.

{¶16} White/Heckerd and Blevins/Johnson filed a supplement to their response to the Estate of Richard Hartman's motion for summary judgment on January 10, 2012.

{¶17} White/Heckerd never filed a response to Mansfield Manor's motion for summary judgment. On October 10, 2012, the trial court granted the motion for summary judgment filed by Mansfield Manor against White/Heckerd.

{¶18} On October 15, 2012, the trial court granted the motion for summary judgment of the Estate of Richard Hartman against White/Heckerd and Blevins/Johnson.

{¶19} On November 14, 2012, the trial court issued a nunc pro tunc judgment entry stating it granted summary judgment in favor of Mansfield Manor on

Blevins/Johnson's claim of intentional tort. Mansfield Manor did not previously file a motion for summary judgment on Blevins/Johnson's claim of intentional tort.

{¶20} It is from these decisions White/Heckerd and Blevins/Johnson appeal.

**ASSIGNMENTS OF ERROR**

{¶21} The appeals of Plaintiff-Appellant Denise L. White, Individually and Executor of the Estate of Geraldine Heckerd (Case No. 12CA115) and Plaintiff-Appellant Louise Blevins, Jr., Administrator to the Estate of Allison R. Johnson (Case No. 12CA116) were consolidated by this Court for oral argument purposes. The appeals and Assignments of Error will be considered separately.

{¶22} The Assignments of Error relating to the appeal of Plaintiff-Appellant Denise L. White, Individually and Executor of the Estate of Geraldine Heckerd (Case No. 12CA115) are as follows:

{¶23} "THE TRIAL COURT ERRED AS A MATTER OF LAW WHEN IT GRANTED SUMMARY JUDGMENT TO THE HARTMAN ESTATE ON THE ALLEGATIONS PRESENTED BY THE PLAINTIFFS, DENISE L. WHITE AND LOUIS BLEVINS, JR. (OCTOBER 15, 2012 *DECISION* & *ENTRY*, RECORD 66)."

{¶24} "THE TRIAL COURT ERRED AS A MATTER OF LAW WHEN IT GRANTED SUMMARY JUDGMENT TO MRM ON ITS MOTION AGAINST THE GERALDINE HECKERD ESTATE WHERE MRM COULDN'T PRODUCE ANY OF ITS WITNESSES WHO ANSWERED PLAINTIFF'S DISCOVERY FOR DEPOSITIONS (OCTOBER 10, 2012 *DECISION* & *ENTRY*, RECORD 65)."

**ANALYSIS**

***SUMMARY JUDGMENT AS TO THE ESTATE OF RICHARD HARTMAN***

{¶25} White/Heckerd argues the trial court erred in granting summary judgment in favor of the Estate of Richard Hartman (October 15, 2012 Judgment Entry). We disagree.

<u>Standard of Review</u>

{¶26} We refer to Civ.R. 56(C) in reviewing a motion for summary judgment which provides, in pertinent part:

Summary judgment shall be rendered forthwith if the pleading, depositions, answers to interrogatories, written admissions, affidavits, transcripts of evidence in the pending case and written stipulations of fact, if any, timely filed in the action, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law. * * * A summary judgment shall not be rendered unless it appears from such evidence or stipulation and only from the evidence or stipulation, that reasonable minds can come to but one conclusion and that conclusion is adverse to the party against whom the motion for summary judgment is made, such party being entitled to have the evidence or stipulation construed most strongly in the party's favor.

{¶27} The moving party bears the initial responsibility of informing the trial court of the basis for the motion, and identifying those portions of the record before the trial court, which demonstrate the absence of a genuine issue of fact on a material element of the nonmoving party's claim. *Dresher v. Burt,* 75 Ohio St.3d 280, 292, 662 N.E.2d

264 (1996). The nonmoving party then has a reciprocal burden of specificity and cannot rest on the allegations or denials in the pleadings, but must set forth "specific facts" by the means listed in Civ.R. 56(C) showing that a "triable issue of fact" exists. *Mitseff v. Wheeler,* 38 Ohio St.3d 112, 115, 526 N.E.2d 798, 801 (1988).

{¶28} Pursuant to the above rule, a trial court may not enter summary judgment if it appears a material fact is genuinely disputed. *Vahila v. Hall,* 77 Ohio St.3d 421, 429, 674 N.E.2d 1164 (1997), citing *Dresher v. Burt,* 75 Ohio St.3d 280, 662 N.E.2d 264 (1996).

<u>Negligence of the Estate of Richard Hartman</u>

{¶29} In their complaints against the Estate of Richard Hartman, White/Heckerd and Blevins/Johnson alleged Richard Hartman was negligent in the possession and storage of the 12-gauge shotgun used in the shooting based on Richard Hartman's knowledge of his son's psychiatric diagnoses and violent tendencies. The Estate of Richard Hartman filed a motion for summary judgment, arguing there was no genuine issue of material fact that Richard Hartman owed no duty to White/Heckerd or Blevins/Johnson; or, if a duty was owed to the deceased, Richard Hartman was not negligent. In support of its motion for summary judgment, the Estate of Richard Hartman filed the affidavit of Richard Hartman, taken before his death, and the deposition of Dr. Desai, Jerry Hartman's psychiatrist. The Estate argued reasonable minds could only conclude Richard Hartman had no prior knowledge that Jerry Hartman would commit a violent act with the shotgun.

{¶30} Richard Hartman stated in his affidavit that his father purchased the shotgun in the 1940s. The shotgun was given to Richard Hartman when his father

passed away. When Jerry Hartman was 15 years old, Richard Hartman stated he gave the gun to his son. Jerry Hartman lived with Richard and Ruth Hartman until his marriage in the 1980s. Jerry Hartman divorced and he occasionally lived with his parents. Jerry Hartman moved to Shelby, Ohio in the 2000s. He moved from Shelby, Ohio and moved into the Mansfield Manor. Jerry Hartman would visit his parents' home.

{¶31} Richard Hartman averred he never heard his son make threats of physical harm to any person prior to May 26, 2006. He stated he was never told by a medical doctor, psychiatrist, psychologist, therapist, or other healthcare provider that Jerry Hartman presented a suicidal or homicidal threat to other persons.

{¶32} In their response to the motion for summary judgment, White/Heckerd and Blevins/Johnson filed the affidavits of Delaney Smith, M.D. and Daniel Kennedy, Ph.D. Their experts stated that based on Jerry Hartman's psychiatric records, Richard Hartman should have known his son suffered from mental illness and could commit a violent act. The Appellants also provided the depositions of the police officers who responded to the Hartman home on May 18, 2006 and interviewed Richard Hartman after the May 26, 2006 incident. During the interview regarding the shooting at Mansfield Manor, the police officer stated that Richard Hartman told the interviewing officer he kept the shotgun in the home. The shotgun was discovered missing after May 26, 2006. Richard Hartman told the officer that at some time, Jerry Hartman took the gun from the home unbeknownst to anyone. The police officer also stated Richard Hartman told him that his son suffered from a number of ailments and was schizophrenic.

{¶33} The trial court granted the motion for summary judgment.  The trial court found the basis of the Appellants' negligence claims was Richard Hartman's knowledge. Neither party deposed Richard Hartman before his death.  In order to establish a genuine issue of material fact, Appellants utilized the reports of the experts and the police officers as to Jerry Hartman's mental health and what Richard Hartman should have known about his son.  The only direct evidence before the trial court of Richard Hartman's knowledge was his affidavit.  The trial court found there was no genuine issue of material fact that Richard Hartman was not aware that Jerry Hartman presented a violent risk to others.

{¶34} We review de novo what duty the Estate of Richard Hartman owed to White/Heckerd and Blevins/Johnson for the actions of his son, Jerry Hartman.  In order to establish a claim for negligence, a plaintiff must show: (1) a duty on the part of defendant to protect the plaintiff from injury; (2) a breach of that duty; and (3) an injury proximately resulting from the breach.  *Jeffers v. Olexo,* 43 Ohio St.3d 140, 142, 539 N.E.2d 614 (1989).

{¶35} In tort law, there is no duty to control the conduct of a third person to prevent him from causing physical harm to another; however, a defendant may owe a duty to a plaintiff based upon a special relationship between the defendant and the third person.  *Gelbman v. Second Natl. Bank of Warren*, 9 Ohio St.3d 77, 79, 458 N.E.2d 1262 (1984); *Commerce & Industry Ins. Co. v. Toledo*, 45 Ohio St.3d 96, 98, 543 N.E.2d 1188, 1192 (1989). "Relationships which result in a duty to protect others include: 1) common carrier and its passengers; 2) innkeeper and guests; 3) possessor of land and invitee; 4) custodian and individual taken into custody; and 5) employer and

employee." *Reddick v. Said*, 11th Dist. No. 2011-L-067, 2012-Ohio-1885, ¶ 38 quoting *Jackson v. Forest City Ents.,* 111 Ohio App.3d 283, 285, 675 N.E.2d 1356 (8th Dist.1996), citing *2 Restatement of the Law 2d,* Torts (1965), 116, at Section 314(A). "Relationships that may give rise to a duty to control a third person's conduct include the following: (1) parent and child; (2) master and servant; and (3) custodian and person with dangerous propensities." *Reddick*, at ¶ 38 quoting *Hall v. Watson,* 7th Dist. No. 01 CA 55, 2002-Ohio-3176, ¶ 16.

{¶36} Whether a duty exists depends on the foreseeability of injury. *Menifee v. Ohio Welding Products, Inc.*, 15 Ohio St.3d 75, 77, 472 N.E.2d 707, 710 (1984). Injury is foreseeable if a defendant knew or should have known that his act was likely to result in harm to someone. *Mudrich v. Standard Oil Co.*, 153 Ohio St. 31, 39, 90 N.E.2d 859, 863 (1950).

{¶37} The Eleventh District Court of Appeals analyzed a similar fact pattern as to those in the present case to determine whether a duty existed for the parents of an adult child with mental health problems. In *Havel v. Chapek*, 11th Dist. No. 2004-G-2609, 2006-Ohio-7014, *appeal not allowed*, 113 Ohio St.3d 1514, 2007-Ohio-2208, 866 N.E.2d 512, the Chapek's adult son, Jeremy killed Jessica, the Havel's adult daughter.

{¶38} During Jeremy's childhood, Jeremy suffered from obsessive-compulsive disorder and depression and received mental health counseling. Jeremy and Jessica began a romantic relationship as teenagers. When they were adults, they became engaged and moved in together. Jessica ended the relationship and Jeremy moved home with his parents.

{¶39} Jeremy owned several guns. On May 16, 2002, Jeremy's mother noticed that the shotgun was missing from Jeremy's room. That day, Jeremy murdered Jessica by a combination of beating, stabbing, and strangulation; thereafter, Jeremy killed himself with a shotgun.

{¶40} The parents of Jessica filed suit against Jeremy's parents asserting claims of negligence, survivorship, and wrongful death. The trial court granted summary judgment in favor of Jeremy's parents. The Eleventh District affirmed the decision.

{¶41} In order to reach their decision, the court examined the common law as to a parent's liability for acts of their child:

"At common law, a parent is not ordinary liable for damages caused by a child's wrongful conduct. However, liability can attach when the injury committed by the child is the foreseeable consequence of a parent's negligent act. In those circumstances, liability arises from the conduct of the parent." *Huston v. Konieczny* (1990), 52 Ohio St.3d 214, 556 N.E.2d 505, at syllabus.

A child remains under the care and control of its parents until the age of majority, defined in Ohio, as the age of eighteen years. R.C. 3109.01 ("[a]ll persons of the age of eighteen years * * * are of full age for all purposes"). It follows then, that a parent is only liable for the "foreseeable consequences" of their negligence in supervising their children during their minority.

Stated otherwise, "there is no duty under Ohio law to control the conduct of another person so as to prevent him from causing physical

harm to another unless a 'special relation' exists between the actor and that person which imposes a duty upon the actor to control the person's conduct." *Littleton v. Good Samaritan Hosp. & Health Ctr.* (1988), 39 Ohio St.3d 86, 92, 529 N.E.2d 449, (citations omitted).   Such a "special relationship" exists between a parent and a minor child.   See 2 Restatement of the Law 2d, Torts (1965), Section 316; approved *Huston,* 52 Ohio St.3d at 218, 556 N.E.2d 505, cf. R.C. 3109.10) "[a]ny person is entitled to maintain an action to recover compensatory damages in a civil action * * * from the parent of a child under the age of eighteen if the child * * * assaults the person").

*Havel*, at ¶ 43-45.

{¶42} The court found that because Jeremy was an emancipated adult at the time he committed the murder, his parents were under no duty to Jessica because of their status as Jeremy's parents.  *Id.* at ¶ 49.

{¶43} Jessica's mother argued that Jeremy's parents knew of and encouraged Jeremy's violent propensities towards Jessica.  "Ohio law also imposes a duty in the following situation: 'One who takes charge of a third person whom he knows or should know to be likely to cause bodily harm to others if not controlled is under a duty to exercise reasonable care to control the third person to prevent him from doing such harm.'  *Morgan v. Fairfield Family Counseling Ctr.* 77 Ohio St.3d 284, 294, 673 N.E.2d 1311, citing 2 Restatement of the law 2d, Torts, Section 319."  *Havel*, at ¶ 50.  The Eleventh District found the evidence presented did not support the claim that Jeremy's parents knew of his violent propensities towards others.  Jeremy had no history of

violent behavior towards anyone but himself.  He did not have a criminal record.  *Id.* at ¶ 51.

{¶44} In support of her argument as to negligence, Jessica's mother relied on the case of *Volpe v. Gallagher*, 821 A.2d 699 (R.I. 2003).  The Appellants in the present case also rely upon the *Volpe* case.  In *Volpe,* the defendant allowed her mentally ill, adult son to live with her.  The son did not have a violent or criminal history.  The defendant was sued for negligence when the son shot and killed a neighbor with a gun that he was allowed to keep.  The jury found for the plaintiffs and the Rhode Island Supreme Court upheld the decision.  *Havel* at ¶ 57.

{¶45} The Eleventh District did not follow the *Volpe* case:

*Volpe* is distinguishable in key respects.  The son in *Volpe* did not suffer from mere depression, but was paranoid and delusional, "sit[ting] by himself in the darkness carrying on conversations with imaginary companions."  The son in *Volpe* had also been previously institutionalized for his mental illness and underwent two years of outpatient treatment during which time his condition worsened.  *Id.,* at 708-709.

In *Volpe,* the mother's liability rested on the duty "to prevent those whom [one] allow[s] to use their property from doing so in a manner that creates an unreasonable risk of harm to others in situations in which the possessors are able to exercise such control."  *Id.* at 711.  In other words, the mother's liability derived from her status as a possessor of land.[FN4] See 2 Restatement of the Law 2d, Torts, Section 318.  In this case, the Chapeks' liability would derive from their alleged act of "taking charge" of

one whom they knew or should have known was likely to cause harm to another. 2 Restatement of the Law 2d, Torts, Section 319. The distinction is important. Inherent in the possession of land is the ability and the necessity of exercising control over those premises. By allowing Jeremy to live with them, the Chapeks did not thereby "take charge" of Jeremy, creating a presumption the ability or the duty for his care and control. "Liability for the negligent acts of a third party is not ordinarily imposed unless the defendant has the authority, as well as the ability, to control that party's actions; the mere fact that the defendant could have exercised that control 'as a practical matter' does not create a duty to do so." *Harstock v. Harstock* (N.Y.App.1993), 189 A.D.2d 993, 993-994, 592 N.Y.S.2d 512; *Kaminski v. Fairfield* (Conn.1990), 578 N.E.2d 1048, 1052 ("[n]either the defendant nor our own research has disclosed any case in which a parent, merely by making a home for an adult child who has a mental disorder, has been held to be '[o]ne who takes charge of a third person' for the purposes of § 319 [of the Restatement 2d of Torts]"); *Alioto v. Marnell* (Mass.1988), 520 N.E, 2d 1284, 1286 ("[t]he fortuity of his living in their home does not create a duty where none otherwise exists; nor does their status as parents, without more, impose on the defendants the duty to supervise and control their emancipated adult son").

FN4. The court in *Volpe* was careful to particularly identify the mother's liability as deriving from her status as a possessor of land: "defendant's liability in this case does not stem from the fact that, because

she was Gallagher's mother and because Gallagher was living with her as an adult when he was mentally ill, therefore she necessarily had the ability and the duty to control his behavior." 821 A.2d at 711.

A third distinguishing feature of the *Volpe* decision is the great emphasis the court placed on the mother's negligence in allowing her son to have access to firearms on her property, which the son used to commit the murder. The court noted that "a person who allows deadly firearms to be stored on his or her property 'is held to the highest standard of due care'." 821 A.2d at 712 (Citation omitted.); also, *Id.* at 710 (" 'Whom the Gods would destroy, they first make mad.' * * * [I]n this case, defendant * * * then allows such an individual to keep guns and ammunition on their property, whereupon he eventually destroys not only himself but one or more other lives.") (Citations omitted.) In the present case, the Chapeks did allow Jeremy to keep firearms on their property. However, there is no evidence that firearms played any part in Jessica's murder, which was by beating, strangulation, and incision.

*Havel*, at ¶ 59-60. The Eleventh District found that Jessica's mother failed to raise an issue whether Jessica's murder was a reasonably foreseeable event or that Jeremy's parents had taken charge of Jeremy so as to be liable for his conduct. *Id.* at ¶ 61.

{¶46} We find the persuasive authority of *Havel* is dispositive of the present appeal. The issue in *Havel* case whether there was a duty on the parents to prevent their adult son from causing harm to another. Generally, there is no duty to control the conduct of a third party by preventing him from causing harm to another, except in

cases where there exists a special relationship between the actor and the third party, which gives rise to a duty to control, or between the actor and another which gives the other the right to protection. *Fed. Steel & Wire Corp. v. Ruhlin Constr. Co.,* 45 Ohio St.3d 171, 173, 543 N.E.2d 769 (1989). A defendant's duty to a plaintiff depends upon the relationship between the parties and the foreseeability of injury to someone in the plaintiff's position. *Simmers v. Bentley Constr. Co.,* 64 Ohio St.3d 642, 64, 597 N.E.2d 504 (1992). The *Havel* court concluded there was no special relationship between Jeremy and his parents to create the existence of a duty. Further, the court found there was no genuine issue of material fact that the violent act committed against Jessica by Jeremy was not foreseeable by Jeremy's parents.

{¶47} In the present case, we affirm the trial court's decision finding there was no duty owed by the Estate of Richard Hartman to White/Heckerd or Blevins/Johnson for the acts of Jerry Hartman. The facts of this case are tragic and becoming all too common in the daily news. However, we must apply the facts before us to the law. In this case, there is no genuine issue of material fact that on May 26, 2006, Jerry Hartman was 44 years old and an emancipated adult. He did not reside in his parents' home but lived independently at Mansfield Manor. There is no factual dispute that the shotgun used by Jerry Hartman was in the parents' home before May 26, 2006. Richard Hartman's affidavit does not dispute that he may have been aware of his son's mental illness, but suffering from a mental illness does not automatically equate violent behavior. The issue is whether Jerry Hartman's violent behavior was foreseeable to Richard Hartman. Jerry Hartman's criminal record prior to May 26, 2006 consisted of one charge of domestic violence of which there is no Civ.R. 56 evidence of its

disposition.  Richard Hartman averred that he was not aware of Jerry Hartman's violent tendencies towards others.  As the trial court held, the experts' opinions as to what Richard Hartman should have known were speculative and did not create a genuine issue of material fact.  The record in this case does not support a finding that Richard Hartman and Jerry Hartman were in a special relationship such that Richard Harman took charge of his adult son or that the criminal behavior was foreseeable to Richard Hartman, thereby creating a duty to prevent the senseless acts caused by Jerry Hartman.

{¶48} The Assignment of Error of Plaintiff-Appellant Denise L. White, Individually and Executor of the Estate of Geraldine Heckerd (Case No. 12CA115) as to the summary judgment motion of Defendant-Appellee Jeffrey Hartman, Administrator of the Estate of Richard Hartman is overruled.

### *SUMMARY JUDGMENT AS TO MANSFIELD MANOR*

{¶49} White/Heckerd argues in the next Assignment of Error the trial court erred in granting summary judgment in favor of Mansfield Manor when White/Heckerd could not respond because Mansfield Manor would not produce its witnesses (October 10, 2012 Judgment Entry).  We disagree.

{¶50} Mansfield Manor filed a motion for summary judgment against White/Heckerd on January 3, 2011.  In its motion, Mansfield Manor argued Geraldine Heckerd was a business invitee on the property on May 26, 2006 and as such, Mansfield Manor did not owe a duty to Geraldine Heckerd because Jerry Hartman's criminal act was not foreseeable.  In support of its motion, Mansfield Manor attached the affidavit of Fred Kane, property manager of Mansfield Manor.

{¶51} On May 31, 2011, White/Heckerd and Blevins/Johnson filed a joint motion to modify response dates to the summary judgment motions. Appellants stated the motion was not a Civ.R. 56(F) motion. The trial court modified the scheduling order to give White/Heckerd and Blevins/Johnson until September 15, 2011 to complete discovery. Appellants' response to the motions for summary judgment was due on September 26, 2011. White/Heckerd filed a motion to compel discovery against Mansfield Manor on August 8, 2011.

{¶52} On October 3, 2011, the trial court issued a scheduling order. Mansfield Manor's discovery responses were due on November 11, 2011. White/Heckerd and Blevins/Johnson were to respond to the motions for summary judgment on January 10, 2012. The trial court would hold a non-oral hearing on the motions for summary judgment on January 30, 2012.

{¶53} Mansfield Manor filed a supplemental motion for summary judgment against White/Heckerd on December 22, 2011. In the motion, Mansfield Manor argued White/Heckerd failed to argue Mansfield Manor was liable under a theory of gross negligence.

{¶54} White/Heckerd never filed a response to Mansfield Manor's motion for summary judgment. On October 10, 2012, the trial court granted the motion for summary judgment filed by Mansfield Manor against White/Heckerd.

{¶55} In her merit brief, White/Heckerd argues not the substantive merits of the trial court's decision on the issue of duty to a business invitee or gross negligence, but rather argues to this court that White/Heckerd could not respond to summary judgment due to Mansfield Manor's refusal to comply with discovery requests. Her Assignment of

Error states, "[t]he trial court erred as a matter of law when it granted summary judgment to MRM on its motion against the Geraldine Heckerd estate where MRM couldn't produce any of its witnesses who answered plaintiff's discovery for depositions." In her reply brief, however, she argues the trial court's decision as to the law of negligence was in error. A reply brief is not the place for briefing new arguments that were not raised in appellant's merit brief. *See* App.R. 16(C). *See, also, State ex rel. Colvin v. Brunner,* 120 Ohio St.3d 110, 2008–Ohio–5041, 896 N.E.2d 979, ¶ 61. We decline to address the arguments raised for the first time in the reply brief. *CSAHA/UHHS-Canton, Inc. v. Aultman Health Found.*, 5th Dist. No. 2010CA00303, 2012-Ohio-897, ¶ 106.

{¶56} The record in this case shows the trial court made significant allowances for White/Heckerd to timely respond to Mansfield Manor's motion for summary judgment. Further, White/Heckerd had a vehicle to address her inability to respond to Mansfield Manor's motion for summary judgment through Civ.R. 56(F). The rule states, "Should it appear from the affidavits of a party opposing the motion for summary judgment that the party cannot for sufficient reasons stated present by affidavit facts essential to justify the party's opposition, the court may refuse the application for judgment or may order a continuance to permit affidavits to be obtained or discovery to be had or may make such other order as is just." White/Heckerd did not file such motion.

{¶57} The Assignment of Error of Plaintiff-Appellant Denise L. White, Individually and Executor of the Estate of Geraldine Heckerd (Case No. 12CA115) is overruled.

## CONCLUSION

{¶58} The Assignments of Error of Plaintiff-Appellant Denise L. White, Individually and Executor of the Estate of Geraldine Heckerd (Case No. 12CA115) are overruled.

{¶59} The judgment of the Richland County Court of Common Pleas is affirmed.

By: Delaney, J.,

Hoffman, P.J. and

Baldwin, J., concur.


_____
HON. PATRICIA A. DELANEY


_____
HON. WILLIAM B. HOFFMAN


_____
HON. CRAIG R. BALDWIN


PAD:kgb